# MARYLAND REPORTS.

## APRIL TERM, A. D., 1865.

---

### GEORGE SLOTHOWER and EDWARD S. MYERS, *vs.* JOHN M. GORDON, Trustee.

CONTRACT, CONSTRUCTION OF: SALES BY TRUSTEES IN CHANCERY: NOTICE: CAVEAT EMPTOR: MISTAKE.—Purchasers from a trustee in chancery sought by petition an abatement of the purchase money, on the ground of a deficiency in the quantity of land, and defects in certain machinery purchased, which had been advertised and described by the trustee as "that valuable cotton factory known as the Phœnix Factory, with 187 acres of land, more or less, attached thereto," with the further representation that "the machinery is in good running order, and now in use." The advertisement further stated that "persons desiring to examine the premises, can leave Baltimore in the morning cars, and return the same day." The petition contained no allegation of fraud against the trustee, actual or constructive. HELD:

1st. That the purchasers were notified that quantity did not enter into the essence of the contract, and they were warned to ascertain the quantity at their own risk.

2nd. Trustees will not be permitted to make representations which are untrue, knowing them to be so, or which they have no reason to believe to be true; but if, acting in good faith, they commit mistakes, such mistakes will not prejudice sales made by them more than those made by other vendors.

3rd. There is no relation of confidence and trust between the trustee and a purchaser; on the contrary, the doctrine of *"caveat emptor"* applies to all sales by trustees, acting under decrees of Courts of Equity.

APPEAL from the Equity Side of the Circuit Court for Baltimore County.

It appears from the record in this case, that in pursuance of a decree of the Circuit Court for Baltimore county, sitting as a Court of Equity, John M. Gordon, as trustee, offered at public sale, on the 14th of September 1852, the Phœnix Factory, a large cotton factory in Baltimore county, and the appellants, being the highest bidders, became purchasers thereof. The sale was reported and finally ratified, and on the 8th of December 1854, a petition was filed by the appellants, praying that certain allowances and deductions should be made to them out of the purchase money then remaining unpaid, because of a deficiency in the quantity of land, and of the inferior condition of the machinery in the factory.

The advertisement of sale offers "that valuable cotton factory known as the Phœnix Factory, with 187 acres of land, more or less, attached thereto;" and in describing the machinery, says: "the machinery is in good running order, and now in use, consisting," &c.; and adds: "persons desiring to examine the premises, can leave Baltimore in the morning cars, and return the same day."

The petition alleges that there was a deficiency of 53 acres in the quantity of land, and that the machinery was not in good running order. The trustee answered the petition, and evidence was taken under a commission, and the matter was then, by agreement, referred to an arbitrator, upon the terms that a *pro forma* order should be passed by the Court in accordance with his award, reserving to each party the right of appeal. The award of the arbitrator was against the appellants, and an order having been passed by the Court below, (PRICE, J.,) dismissing their petition, they have appealed therefrom.

So much of the evidence in the cause as is essential to a proper understanding of its decision, is stated in the opinion of this Court.

Slothower, *et al.*, *vs.* Gordon, Trustee.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Wm. F. Frick*, for the appellants:

I. In reference to the machinery, there was a gross misrepresentation, in a matter of substance, of its condition when sold, and the purchasers were misled by the false statement, and are entitled to relief. The rule is, that the vendor "shall make the representation good." 1 *Story's Eq. Jur.*, sect. 191. 1 *Story's Rep.*, 190. *Story on Sales*, 165, 166.

It is immaterial whether the vendor knew the representation to be false, or made the assertion without knowing whether it was true or false. The rule is the same, if the purchasers were misled. 1 *Story's Eq. Jur.*, sect. 193. The case put in *sect.* 195, is in point: "If a person should sell a ship, representing her to be of a certain tonnage, &c., and fully equipped and found with new sails and rigging, either of these representations, if materially untrue, so as to effect the essence or value of the purchase, would avoid it."

The application of these principles to a case like this, is admitted in *Ely vs. Stewart & Speed*, 2 *Md. Rep.*, 415.

II. In reference to the misrepresentation about the number of acres attached to the factory, the case differs materially in its facts from the cases of *Jones vs. Plater*, 2 *Gill; Stull vs. Hurt*, 9 *Gill;* and *Hall vs. Mayhew*, 15 *Md. Rep.* These cases all refer to and proceed upon the principle as announced by Judge Story, in 1 *Story's Eq. Jur.*, *sect.* 195. "It may be laid down, as a general rule, that when the sale is fair, and the parties are equally innocent, and the thing is sold in gross, by the quantity, by estimation and not by measurement, a deficiency will not ordinarily entitle a party to relief, either by an allowance for the deficiency, or a rescission of the contract. Thus the sale of a farm, by known boundaries, containing by estimation a certain number of acres, will bind both parties, whether the farm con-

tains more' or less.'' So this Court says in *Hall vs. May-hew*, 15 *Md. Rep.*, 568: ''The property was sold, not by the acre, but in gross. In Maryland, the law is well settled, that where quantity does not enter into the essence of the contract, in the absence of fraud and misrepresentation, the purchaser is not entitled to an abatement.''

The chancery rule in Maryland, in reference to the use of the words ''more or less,'' is clearly and fully laid down in *Hoffman vs. Johnson*, 1 *Bland*, 109; and *Andrews vs. Scotton*, 2 *Bland*, 645.

It will be seen, that all the cases in Maryland and elsewhere, proceed on the ground that both parties are equally innocent, and that the misrepresentation is in no degree tainted by fraud, actual or constructive. The fraud which would affect the case, is described (see *Story*, *Vol.* 1, *sect.* 187) in the sense of a Court of Equity, as properly including all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and which are injurious to another.

Now, if in this case (as in all the previously decided cases) the deed to Gordon had described the land as containing ''187 acres, more or less,'' he would have been innocent in making the representation, as he was not bound to have the land surveyed, so as to confirm the statement. But when the deeds to and from himself, and all the previous deeds and the proceedings in the cause, in which he was trustee, described the land as containing ''134 acres, more or less,'' he was guilty of culpable negligence in not looking at them, and cannot be excused, either as vendor or as an officer of the Court, in making a false statement of his own title. *Stebbins vs. Eddy*, 4 *Mason*, 419. *Nelson vs. Matthews*, 2 *Hen. & Mun.*, 167. *Duvall vs. Ross*, 2 *Mun.*, 292. His omissions ''involved a breach of equitable duty, trust and confidence justly reposed,'' and were injurious to another, and were, therefore, in the sense of a Court of Equity, fraudulent in their character. The law in Maryland is, that in such cases the Court is the vendor,

and the trustee only its officer and agent. *Bolgiano vs. Cooke*, 19 *Md. Rep.*, 375.

No case can be found where the Court, having the power to grant relief, has refused it, where its purchaser has been injured by the gross negligence and wholly unauthorized false representations of its agent, the trustee. The general rule about sales in gross, and not by the acre, has never been carried so far. The trustee could not sell more or other land than that described in his deed and in the decree. *Neal vs. Hughes*, 10 *G. & J.*, 10.

III. If the purchasers are entitled to relief, they can claim it by way of abatement from the purchase money, as well as by a rescission of the contract. *Marbury vs. Stonestreet*, 1 *Md. Rep.*, 147. *Kent vs. Carcaud*, 17 *Md. Rep.*, 300.

IV. Gordon was not merely trustee of the Court for the sale in this case; he was also complainant and mortgagee, and entitled to the proceeds of sale. There was not, by the conditions of his title, any restriction upon his right to control those proceeds. By his agreement with the purchasers, he gave them the right to look to these proceeds for their indemnity, if they could establish their claims. This he could not have done as trustee under the decree, but only as the complainant in the cause. The issue raised by him with the purchasers, (rightly interpreting his answer, as modified by his subsequent admission of the character of the agreement between him and them,) presented only the questions of fact, whether he had made false representations or not, and whether they had been injured by them, if false, and to what extent. It will be observed that all the evidence offered on his part, had reference to these issues of fact only. He must be considered, therefore, as having conceded their right to an abatement, provided they proved the injury done them.

It will be seen, therefore, that this case, in many respects, presents peculiar features, which distinguish it from the cases cited for the appellee.

*I. Nevett Steele* and *H. R. Dulany*, for the appellee:

I. The sale made by the trustee was of a "cotton factory, with 187 acres of land, more or less," and was made in gross, and not by the acre, and it is contended for the appellee, that quantity was not of the essence of the contract, and that even if the alleged deficiency in the number of acres is sufficiently and properly proved, the appellants are not entitled to any deduction therefor. See *Hall vs. Mayhew*, 15 *Md. Rep.*, 551. *Stull vs. Hurt*, 9 *Gill*, 146. *Jones vs. Plater*, 2 *Gill*, 125. *Hurt vs. Stull*, 3 *Md. Ch. Dec.*, 26. *Broom's Max.*, 366.

II. The appellants are not entitled to any deduction from the purchase money, on the ground that the machinery was not "in good running order," for the following reasons:

1st. The words "in good running order," in the trustee's advertisement, were but the expression of his opinion and belief, and are too indefinite and uncertain to raise a warranty or constitute a binding representation. They do not mean in the best, or in perfect order, but in order reasonably fit for running. The actual condition of the machinery was a matter of fact, but whether that condition did reasonably constitute "good running order," was purely a matter of opinion. 1 *Story's Eq. Jur.*, secs. 191 and 197. *Story on Contracts*, secs. 529, 530. *Hagins vs. Plympton*, 11 *Pick.*, 97.

2nd. These words, "in good running order," in the advertisement, were not intended by the trustee, or understood by the public, as a warranty or binding representation, and were not relied on as such by the appellants. The words are found in an advertisement of sale by a trustee, not professing to be an expert in matters of machinery, and who, in the same advertisement, invites an examination of the premises, and gives full time and opportunity therefor. He had a right to presume, as matter of fact and law, that all bidders had availed themselves of the opportunity, and made such examination. McKenzie proves that the defects in the machinery were perfectly visible, and were, there-

fore, not latent defects. If the appellants meant to depart so far from the usual course of business and their legal duty, as to buy a thing proffered for their inspection without looking at it, and upon the faith of the trustee's opinion, they should and would have asked for an express warranty, and would not have relied on implying a warranty from laudatory language in the advertisement. There is no proof in the record that the appellants ever read or heard the advertisement before their purchase. Mr. Slothower was at the sale, but it does not appear whether he was present at the moment when the advertisement was read by the auctioneer. The proof is, that he made the purchase, not on the faith of the advertisement, but on information obtained from the witness, McKenzie, to whom he was referred as a person who had worked the mill, and knew all about it. That this was so, is further proved by the fact that on the day after the sale, that is, on the 15th September 1852, the appellants, with McKenzie as their manager, took possession of the factory, examined the machinery, and commenced running the mill, and that although McKenzie informed them the machinery would require $1,500 to $2,000 to put it in good running order, they made no complaint. So far from then complaining, on the 21st and 23rd of the same September, they made to the trustee the cash payment due on their purchase. 1 *Story's Eq. Jur.*, secs. 200 *a*, 202, 208. *Ely vs. Stewart*, 2 *Md. Rep.*, 408, 413, 414. *F. & P. Bank vs. Martin*, 7 *Md. Rep.*, 342. *Duffie vs. Mason*, 8 *Cowen*, 25. *Atwood vs. Small*, 6 *Clarke & Finelly*, 316.

3rd. The evidence does not satisfactorily establish that the machinery was not in good running order, whether that be regarded as matter of fact or of opinion.

IV. The appellants have been guilty of *laches* in making their claim and filing their petition. This is not sufficiently excused by the admission or agreement of the trustee. He had returned from Europe twelve months, and the fund had been distributed by an account finally ratified before

the petition was filed.    His agreement in no degree admitted the validity of the claim, and merely consented to what he could not prevent, viz: that a petition might be filed at any time before distribution of the proceeds.

BOWIE, C. J., delivered the opinion of this Court:

The appellants seek an abatement of the purchase money for certain property advertised and described as "that valuable cotton factory known as the Phœnix Factory, with 187 acres of land, more or less, attached thereto," with this further representation, viz., "the machinery is in good running order, and now in use," and sold at public vendue by the appellee.    They allege, that relying upon the truth and accuracy of the description, and representation of the lands and machinery, they were induced to become the purchasers for a large sum, when, in fact, upon survey, the lands are found to contain only one hundred and thirty-four acres, and the machinery was found exceedingly imperfect and in bad condition, requiring large outlays for repairs, for which they claim proper allowances and deductions.

The appellants do not charge in their petition any fraud, actual or constructive, against the trustee, but rely upon the facts alleged for their claim to an allowance for the deficiency in the quantity of the land, and the defects in the quality of the machinery.    Their solicitor, however, in his brief and argument, assumed broader ground, and contended that this case was to be distinguished from those in which the parties were equally innocent, and the sale was fair, and the property sold by estimation, and not by measurement.    He insists the fraud in this case consists in omissions and concealments, which involve a breach of legal or equitable duty, trust and confidence, justly reposed, which was injurious to the appellant; that in reference to the machinery, there was gross misrepresentation, which the vendor was bound to make good.

There is no relation of confidence and trust between the trustee and purchaser; on the contrary, the doctrine of "*caveat emptor*" applies to all sales by trustees acting under decrees of Courts of Equity. 7 *Md. Rep.*, 342, *Fars. & Planters Bank vs. Travers & Martin.*

Trustees will not be permitted to make representations which are untrue, knowing them to be so, or which they have no reason to believe to be true, but if acting in good faith, they commit mistakes, such mistakes will not prejudice sales made by them, more than those made by other vendors. The general principles which regulate applications of this kind are familiar.

"Equity, as a practical system, although it will not aid immorality, does not affect to enforce mere moral duties. But its policy is to administer relief to the vigilant, and to put all parties upon the exercise of a searching diligence." 1 *Story's Eq. Jur.*, sec. 148.

"Where each party is equally innocent, and there is no concealment of facts which the other has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference." It is strictly "*damnum absque injuria.*"

The misrepresentations complained of, are, that the lands contained "187 acres of land, more or less," and "that the machinery was in good running order." The terms used in describing the *quantity* of the land, have acquired a legal meaning in this State, which is supposed to be known to all purchasers. The construction of these terms is judicially determined by the cases cited by Judge Krebs, in his elaborate opinion in the case of *Hall, et al., vs. Mayhew*, 15 *Md. Rep.*, 559, afterwards affirmed by this Court. The learned Judge says: "It is not necessary to look beyond the decisions of our own Courts for the true import and effect of the terms 'more or less,' or 'estimated to contain,' in contracts for the sale of lands." In *Jones vs.*

*Plater*, 2 *Gill*, 128, the Court adopts the law as stated in the words of Judge Story, in the case of *Stebbins vs. Eddy*, 4 *Mason*, 419. "It seems to me that there is much good sense in holding that the words more or less, or other equi- valent words in contracts or conveyances of this sort, should be construed to qualify the representation of the quantity in such a manner that, if made in good faith, neither party will be entitled to relief on account of a deficiency or sur- plus."      *      *      *      *      *      *

In *Hurt vs. Stull*, 3 *Md. Ch. Dec.*, 26, the Chancellor says: "If the representation of the quantity be mere mat- ter of description, and *not of the essence of the contract*, as where there are qualifying words, as '*more or less*,' or '*by estimation*,' the vendee must be understood as assuming upon himself the risk of the quantity." He also quotes the language of Judge Story, as above cited, and says: "It must be regarded as establishing the law here." This de- cision was affirmed in 9 *Gill*, 451, where the Court says: "These words must be considered as qualifying the repre- sentation of quantity, and neither party could claim relief on account of a deficiency or a surplus."

According to these decisions, the purchasers were notified that quantity did not enter into the essence of the contract, and they were warned to ascertain the quantity at their own risk.

There is no evidence that there was a "*suppressio veri*" or "*suggestio falsi*" in advertising or conducting the sale. The purchasers were virtually invited to examine for them- selves, by the information that the premises could be reached by the morning cars from Baltimore. The same property had been sold at public sale in August 1851, for $33,000, by a trustee of good legal standing and reputation, who described it, both as to quantity and quality, in almost the identical terms here used,—the present trustee being the purchaser, for the benefit of certain creditors, at that sale.

It would be harsh in the extreme, without further evi- dence, to impute to the appellee fraud in adopting a de-

11

scription used without exception by a solicitor of acknowledged integrity and capacity in previous proceedings in equity, under which he had purchased for a large sum. However the mistake occurred, it is obvious it did not originate with him, and absolves him from all suspicion of wilful misrepresentation.

The defects in the machinery (if any) were open to observation,—in the language of the appellants' witness, McKenzie, "such as any practical man could see as soon as he entered the factory."

In the opinion of the last occupant and operator of the factory, "so far as the machinery was concerned, the mill was always in a condition to do full work." It was not the province of the trustee, an officer of the Court, to decide a question of this character, and the mill being in actual use when sold, the presumption is, that he was credibly informed and believed the condition of the mill to be such as represented. Finding no fraud or misconduct in the trustee, the order dismissing the appellants' petition must be affirmed.

*Order affirmed.*

(Decided April 7th, 1865.)