# JOSEPH KLEIMAN ET AL.

## vs.

## ORION KNITTING MILLS.

*Sale—Goods to be Manufactured—Time of Delivery—Contract Provision—Approximate Dates—Evidence— Surrounding Circumstances.*

An exception to the refusal of a prayer, submitted at the close of plaintiff's case, that a verdict be directed for defendant, is waived by the latter if he proceeds with his case and offers testimony in support of his contention.          p. 553

Time is of the essence of a commercial contract calling for the shipment of goods by a manufacturer, unless a contrary provision is contained therein.          p. 553

In determining the mutual intention of the parties to a contract, the contract is to be read in the light of the circumstances under which it was entered into.          p. 554

Where a contract for the shipment of goods by a manufacturer provided that the "delivery dates mentioned are approximate only," and the evidence showed that at the time of execution of the contract there was a shortage both of labor and material, and a general congestion in transportation, which conditions were abnormally unfavorable for shipments at fixed definite times, and could not be prevented by the most diligent efforts that the manufacturer "could and did make," *held* that it was a question for the court, sitting as a jury, whether a delivery forty-nine days after the date named involved a reasonable and substantial compliance with the contract.          pp. 553-555

On an issue as to whether there was an unreasonable delay in the shipment of goods by the manufacturer, under a contract which provided that the "delivery dates mentioned are approximate only," testimony by the manufacturer's manager and shipping clerk, as to the conditions in regard to labor,

materials, and transportation, existing in the factory from the date of the contract until the goods were shipped, was admissible.                                    p. 556

*Decided December 2nd, 1921.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Action by the Orion Knitting Mills, a body corporate, against Joseph Kleiman and Louis G. Pollikoff, co-partners trading as the Baltimore Jobbing and Specialty Company, for the purchase price of goods sold. From a judgment for plaintiff, defendants appeal. Affirmed.

The cause was submitted on briefs to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Augustus C. Binswanger,* for the appellants.

*G. W. S. Musgrave,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The appellants, who are engaged in the City of Baltimore in the purchase and sale of cotton and woolen goods as "jobbers," on January 15th, 1920, ordered from the appellee, a manufacturer of such merchandise located at Kinston, North Carolina, sixty dozen pairs of stockings at six dollars per dozen. The contract of sale provided that the articles purchased were to be shipped to the appellants at Baltimore in March, but it also contained this provision:

> "This order is not subject to cancellation except by agreement. Seller shall not be held liable for late or non-delivery caused by strikes, fires or other causes beyond our control. The acceptance by railroad or other carrier shall constitute delivery. These goods

shall not be returned, nor will allowance be made for
any cause after five days from receipt. All terms of
sale and deliveries are set forth on this copy of order.
If not in exact accordance with conditions agreed
upon, it must be returned for correction within five
days from its receipt. This order is given and ac-
cepted subject to a limit of credit determinable at any
time by Mfg. or Seller. Delivery dates mentioned are
approximate only."

The stockings were not shipped until May 19th, 1920, and
did not arrive at their destination until June 29th, 1920.

In the meantime the appellants had received from the ap-
pellee a bill for them and, in reply to that demand, they
wrote the appellee on May 31st, 1920, that they would return
"the goods" as soon as they received them, because "the order
was placed" for "March 1st" delivery and because they had
never received an acknowledgment of it. To this letter the
appellee replied that it had not shipped the goods sooner
because of labor troubles, and that it had not acknowledged
the order because it had been accepted by its duly accredited
agent, and no further acknowledgment was needed.

After some further correspondence between the parties,
which failed to affect their respective positions, this suit was
brought by the appellee for the purchase price of the stock-
ings. The verdict and judgment being for the plaintiff, the
defendants took this appeal. In addition to the facts to
which we have referred, the uncontradicted evidence showed
that the delay in shipment was due to a shortage of labor and
material, and to a congestion of transportation facilities,
which prevented the appellee from securing supplies neces-
sary for the manufacture of the articles sold to the appellants,
and that all of these causes were beyond the appellee's control.

It also appeared that it was necessary for the appellants
to have the goods ordered "around the month of March so
that" they could make immediate deliveries for the spring of
the year, and that since they failed to receive the merchan-

dise ordered from the appellee at that time they had to go out and buy other goods.

The important question presented by the appeal is whether these facts were legally sufficient to entitle the plaintiff to recover, and that question is the subject of the sixth and seventh exceptions.

The sixth exception refers to the court's refusal of a prayer offered by the defendants at the close of the plaintiff's case, in which the court was asked to direct a verdict for the defendants on the ground that there was no evidence legally sufficient to support the plaintiff's claim. After the refusal of this prayer, the defendants proceeded with their case and offered testimony in support of their contentions. In doing that they waived this exception to the court's ruling on their prayer, and it cannot be reviewed in this Court. *Wilkin Mfg. Co.* v. *Melvin,* 116 Md. 108; *Barabasz* v. *Kabat,* 91 Md. 55; *New York, P. & N. R. Co.* v. *Jones,* 94 Md. 35; *United Rwys. Co.* v. *Deane,* 93 Md. 624.

The subject of the seventh exception is the court's refusal to grant a similar prayer at the close of the whole case. The appellants contend that this prayer should have been granted because the goods were not shipped within the time stipulated in the contract of sale. It is well settled that time is of the essence of commercial contracts of the nature of that sued on in this case (*Penn Oil Co.* v. *Triangle P. & G. Co.,* 136 Md. 574) and, if the contract had contained no provision as to the time other than that the shipment was to be made in March, the appellants would have had the right to cancel the contract and refuse the shipment, since it was not made within that time. But the contract provides expressly that "delivery dates mentioned are approximate only," and since both parties executed it and are bound by its terms, the only question is whether under those conditions it can be said as a matter of law that a delay of forty-nine days was sufficient to warrant the defendants in cancelling the contract and refusing to accept the goods, and the answer to that question turns

largely upon the meaning to be given the word "approximate." Literally the word means "near to," and in ordinary usage it is equivalent to "about," "a little more or less," "close." *Oxford Dictionary; Standard Dictionary;* 4 *C. J.,* 1465.

In the contract under consideration it is used to qualify the stipulation as to the time when the shipment was to be made and to an extent made that time indefinite, and since, in the construction of contracts, the primary rule is to ascertain and effect the mutual intent of the parties (13 *C. J.,* 522), it becomes necessary to inquire what meaning the parties intended it to have as used in this contract. In determining that intention "the contract itself must be read in the light of the circumstances under which it was entered into" (*Saunders* v. *Ducker* 116 Md. 479), because since the purpose of the inquiry is to learn "the meaning of the writing at the time and place when the contract was made, all the surrounding circumstances at that time necessarily throw light upon" its meaning and aid in interpreting it. *Williston, Contracts,* par. 618. Applying these rules to the facts before us, it is clear that by the use of the word "approximate" the parties intended to enlarge and not to restrict the time of shipment.

At the time the contract was made, the evidence conceded by the prayer showed there was a shortage both of labor and material and "a general congestion in transportation," conditions which had a tendency to hinder and delay the manufacture and shipments of such merchandise as was the subject of this contract, and which were "abnormally unfavorable for shipments at fixed definite times," and which could not be prevented by "the most diligent efforts that the manufacturer could and did make." Under such circumstances the most natural and probable desire of the manufacturer would be to secure some latitude in the time limited for the performance of the contract, and that purpose and the reason for it must have been patent to the buyer, since both knew that

while the shipment might be made in March, yet it was also possible that under conditions then existing it could not be made within that time. When, therefore, it was stipulated that the delivery dates were "approximate only," it was intended that delivery should be made "near" or "about," or "shortly after" the month of March, but not necessarily during that month, and, in determining what would be a satisfactory compliance with that undertaking, we should ascertain what under all the circumstances was a reasonable time for the shipment, because since the time of performance is not definite (and the use of the word "approximate" excludes the idea of definiteness and exactness) there is no other standard upon which we can rely (35 *Cyc.* 180) than that fixed by reason and common experience, and we cannot say as a matter of law that there was no evidence in the case legally sufficient to warrant the court sitting as a jury in finding that the appellee had made delivery in reasonable and substantial compliance with the terms of the contract, and if he did so the plaintiff was entitled to recover. *Bagby* v. *Walker,* 78 Md. 239. There is nothing in this conclusion in conflict with the cases of the *Standard Scale, etc. Co.* v. *Balto. E. & N. Co.,* 136 Md. 283, in which the Court held that a delay of a year in a contract providing for prompt delivery was not a reasonable compliance with the contract, or of *Salmon* v. *Boykin,* 66 Md. 541, in which it was held that a definite and specific stipulation in a mercantile contract as to the time of shipment was of the essence of the contract. There are instances, as in the case first referred to, where the facts not in dispute establish the unreasonableness of the delay as a matter of law, but we cannot give to the facts involved in this case any such conclusive and decisive weight.

From what has been said it follows that there was no error in the court's ruling in reference to the prayer under consideration.

There are five exceptions relating to the admission of evidence. It is not clear upon what theory these exceptions

rest.  The testimony objected to was given by V. A. Abbott, a shipping clerk for the appellee, who had been in that position continuously for fifteen years, and by J. F. Taylor, its general manager, secretary and treasurer, who had held those positions for thirty years.  They described, in the evidence under consideration, the conditions as to labor, materials, and transportation, existing at their factory from the time the contract was made until the goods referred to in it were shipped.  These facts were all relevant to the issues involved in the case, and especially to the question as to whether the delay in shipment was unreasonable, and we can see no valid objection to them.  It is true that the witnesses did incorporate in their testimony statements as to the practice and custom observed in their business as to what was a reasonable time within which to make shipments, but all such statements were struck out and excluded from the consideration of the court and could not have injured the appellants.

Finding no errors in the rulings of the Baltimore City Court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellee.*