545 A.2d 46

**Theodore A. CAVACOS**

v.

**Ghulam SARWAR.**

**No. 148, Sept. Term, 1987.**

Court of Appeals of Maryland.

Aug. 4, 1988.

---

Janet M. Truhe (David M. Buffington and Semmes, Bowen & Semmes, Baltimore), on brief, for appellant.

Stephen J. Kleeman (Eugene A. Seidel, Baltimore), on brief, for appellee.

Argued before MURPHY, C.J., COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (Retired), Specially Assigned.

MARVIN H. SMITH, Judge, Specially Assigned.

In this legal malpractice case we shall affirm the judgment of the Court of Special Appeals contained in an unreported opinion in *Sarwar v. Cavacos* (No. 1364, September Term, 1986, filed August 3, 1987), which held that a trial judge in the Circuit Court for Baltimore City erred in taking the case from the jury at the end of the plaintiff's case. The case involves the sale of real estate and the question of whether the sale was in gross.

Maryland Rule 2–519(b) is applicable. It states:

"When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made."

This was a jury trial. Therefore, the trial judge was required to consider all evidence and inferences in the light most favorable to the plaintiff.

We state the facts as set forth by the Court of Special Appeals:

"Viewed in ... the light most favorable to Sarwar, we will briefly recount the evidence presented. In June of 1980, Sarwar entered into a contract with Zullo Enterprises, Inc. to purchase investment property in Baltimore County. The property was improved by three separate buildings that housed nine apartments. The seller marketed the property on the basis that the nine units produced a certain income. Sarwar concluded that the income to be generated from the property was sufficient to offset the existing expenses plus the anticipated debt service. Additionally, he expected to improve the financial return by installing separate utility meters for each apartment.

"Prior to signing the contract, Sarwar went to the seller's attorney and insisted that the contract specify the lot size. The parties agreed to and inserted into the contract the words 'lot size approximately 1½ acres.' Sarwar stated at trial in response to a question by the court that the size was important to him because it was a waterfront lot and 'the size of the lot is important from the properties' value point of view.'

"Shortly thereafter, Sarwar retained the legal services of Cavacos and requested him to 'check the lot sizes and also the legal use on the property to make sure it was being legally operated.'[1] Sarwar testified that he told Cavacos that the property was to be used for nine apartments and directed Cavacos to verify that the lot size was as specified in the contract.

"In late July of 1980, Sarwar received correspondence from Cavacos enclosing a letter from the seller's attorney that disclaimed any independent knowledge of the size of the lot. According to Sarwar, Cavacos assured him prior to the settlement that he had checked the lot size and legal use of the property. In fact, Cavacos did not obtain a survey or other definitive proof of the size of the lot or its legal use.

"Sarwar and Zullo Enterprises, Inc. settled on the property on September 17, 1980. After settlement, Sarwar implemented his plan to facilitate installing separate meters in the apartments by purchasing separate heating units at an expense in excess of $9,000. Before the work was completed, Baltimore County advised Sarwar that the property could not sustain that many apartments due to the size of the lot. The County did, however, grant Sarwar provisional permits to complete installation of the meters and later notified him of the need to register the property as a legal non-conforming use if he wished to continue to use the nine apartments. In the spring of

---

1. Cavacos states in his brief that had the court denied his motion for judgment, he would have testified contesting this fact and others.

1981, as part of this process, Sarwar ordered a survey of the property. The survey showed the lot size to be .94 acres, which confirmed the County's contention that the lot size was less than that permitted under the Baltimore County zoning regulations for use of nine apartments. The property's zoning classification did not permit more than 5.5 dwellings per acre.

"Sarwar sought legal non-conforming use status on the basis that the use predated the adoption of the zoning ordinance. Sarwar did not qualify under this or any other exception and the zoning administrator required Sarwar to cease use of two of the apartments. Sarwar noted an appeal which he later dismissed on advice of counsel.

"Faced with the loss of rental income from the two apartments, Sarwar could not continue the venture and foreclosure proceedings were instituted on the property. The foreclosure was finalized with Zullo Enterprises, Inc. 'buying in' the property for substantially less than the mortgage debt. Zullo Enterprises, Inc. thereafter attempted to obtain a deficiency decree against Sarwar. Sarwar was able to negotiate a reduced deficiency and is paying the deficiency decree in installments.

"Sarwar filed a legal malpractice claim against Cavacos for negligence in the legal services he rendered Sarwar. At trial, Geoffrey Foreman, Esquire, an expert who testified for Sarwar, stated that in his opinion, Cavacos failed to render competent legal services. In response to a hypothetical question, he opined that, given the facts as related to and discoverable by Cavacos, a reasonable and prudent attorney would have checked the zoning. Foreman based his opinion on the fact that a discrepancy in the acreage would affect Sarwar's right to use the property for the nine apartments since most zoning ordinances limit the number of units per acre. Counsel asked Foreman whether the letters written by the seller's attorney to Cavacos, in addition to other factors, would lead a reasonable and prudent attorney to conduct a zoning

check. Foreman answered in the affirmative, indicating that 'a lot of red flags would be raised in my mind.' Foreman also expressed the opinion that Sarwar could have rescinded the contract due to the discrepancy in the acreage, notwithstanding the fact that the contract was fully executed.

"Sarwar also presented evidence at trial of damages consisting of his loss of investment, money spent subsequent to the purchase for improvements, zoning proceedings and counsel fees, and the payments on the deficiency. Following the close of Sarwar's evidence, the trial court entered judgment for Cavacos."

█ In a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) The attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client. *Wooddy v. Mudd*, 258 Md. 234, 237, 265 A.2d 458, 460 (1970), and *Kendall v. Rogers*, 181 Md. 606, 611–12, 31 A.2d 312, 315 (1943), both quoting *Maryland Casualty Co. v. Price*, 231 F. 397 (4th Cir.1916).

█ As the Court of Special Appeals pointed out, Sarwar "focuses only on the third element which requires that any negligence on the attorney's part proximately caused his client's damages." Running through Cavacos' defense was a contention that Sarwar had entered into a valid and binding contract before he retained Cavacos and hence, as the intermediate appellate court put it, he "contend[ed] that even if he had advised [Sarwar] prior to settlement of the zoning and acreage problems, [Sarwar] could not have rescinded the contract and, hence, any alleged malpractice could not have been the proximate cause of any of [Sarwar's] damages."

The Court of Special Appeals focused on issues of zoning, acreage, and damages. There was in the contract between Sarwar and the vendor of the property he purchased a clause which said:

"Title to the property shall be good and merchantable free of liens and encumbrances ... except: Use and occupancy restrictions of public record which are generally applicable to properties in the immediate neighborhood or the sub-division in which the property is located...."

The intermediate appellate court said that this clause was "an exact replica of th[e] contract provision" in *Levin v. Favorite,* 226 Md. 626, 174 A.2d 723 (1961), where this Court said in a case where the buyer contended on appeal that the parties were mutually mistaken that the subject property was actually zoned for use and occupancy as a seven unit multiple dwelling:

"[W]here a contract is executed in the face of a consciously considered risk as to the existence or non-existence of a certain fact, which risk is assumed by one party or the other, the contract may not be avoided, even where there is a mutual mistake as to the existence of the fact. *Restatement, Contracts,* § 502, Comment f; 4 Pound, *Jurisprudence,* 457; 3 *Corbin, Contracts,* Section 605; 91 C.J.S., *Vendor and Purchaser,* § 51 d(1). Cf. *Hill Sand & Gravel Co. v. Pallottine Fathers House,* 220 Md. 526, 154 A.2d 821." 226 Md. at 628, 174 A.2d at 724.[1]

On the issue of acreage the intermediate appellate court observed:

"In the case *sub judice,* [Sarwar] requested, prior to signing the contract, that it state that the acreage was one and one-half acres. He testified,

---

1. We are not required in this case to pass upon a zoning violation without such a contract provision. We observe, however, that in *Heckrotte v. Riddle,* 224 Md. 591, 594–95, 168 A.2d 879, 881 (1961), Judge Horney said for the Court by way of dicta relative to a zoning violation: "Had they scrutinized the land records and made a location survey, they would have discovered the side-yard violation, and could not have been compelled to perform the contract of sale by accepting a conveyance of the property. See *Perlmutter v. Bacas,* 219 Md. 406, 411, 149 A.2d 23 (1959), and the authorities and cases therein cited." *Marathon Builders, Inc. v. Polinger,* 263 Md. 410, 283 A.2d 617 (1971), relied upon by Cavacos in the trial court, arose in a different context and is not contrary to the dicta set forth in *Heckrotte.*

'When I inspected the property I had some doubts about the size of the lot....

\*     \*     \*     \*     \*     \*

'Okay, it didn't seem like that the lot size was acre and a half.  So I insisted that it be put in the contract.' This addition was inserted into the contract parenthetically following a description of the property as 'lying in Baltimore County, Maryland, known and designated as 202 WOODLAND AVENUE, DUNDALK, MARYLAND 21222, and including one brick and two frame buildings (lot size approximately 1½ acres, in fee simple) and the appurtenances thereon....'  Both parties initialed the inserted parenthetical and executed the contract on June 27, 1980.

"[Sarwar] testified that he then requested [Cavacos] to verify the lot size.  In response to [Cavacos'] inquiry, the seller's attorney responded in late July, 1980 that 'in reference to the amount of acreage involved, we have no knowledge thereof since we are relying strictly on the deed and plat.'  [Sarwar] claims he proceeded to settlement in September, 1980 in reliance on [Cavacos'] subsequent assurance that the lot size was as specified in the contract.

"Assuming this to be true and viewing the facts in the best light for [Sarwar], the trial judge would have to infer that [Sarwar] would have refused to settle on the property had [Cavacos] advised him of the acreage discrepancy, and would have attempted to rescind the contract.  Unquestionably, the evidence revealed that at minimum [Sarwar] and the seller were mutually in error that the lot size was 1.5 acres when in fact it was .94 acres.  Whether [Sarwar] could have rescinded would have depended on whether the mistake was material—stated another way, whether a fact finder would have believed that the exact acreage was a material consideration upon which the contract was based."

The Court of Special Appeals quoted from its then recent opinion in *Goettee v. Steele,* 71 Md.App. 520, 526 A.2d 626

(1987), *rev'd* 313 Md. 11, 542 A.2d 847 (1988). The gist of this portion of the court's opinion is contained in its statement:

"[Sarwar] indicated in his testimony that the amount of land was of significance to him because he was buying waterfront property and 'the size of the lot is a prime consideration for its value' and he 'wanted to pay for the acreage that [he] supposed [sic] to be getting.' The trial judge could not ignore that testimony. The favorable inference which could be reasonably drawn from [Sarwar's] insistence that the size of the property be added to the contract by interlineation is that he intended to purchase 1.5 acres and not merely the tract of land described as 202 Woodland Avenue.

"Viewing the evidence in [Sarwar's] favor, we hold that a fact finder[2] could reasonably decide that [Sarwar] purchased by the acre and not in gross, and thus that he would have been able to rescind the contract due to the deficiency in actual acreage. If [Sarwar] could have rescinded the contract, then any negligence on [Cavacos'] part in not advising [Sarwar] of the acreage discrepancy as his means to avoid the contract proximately caused [Sarwar's] losses resulting from settling on the property.

"The trial judge in the case *sub judice* found that there was insufficient evidence from which a jury could infer that [Cavacos'] negligence was the proximate cause of [Sarwar's] losses based on his perception that [Sarwar's] expert had expressed two contrary opinions on whether [Sarwar] could have rescinded the contract. Our review of the record reveals that [Sarwar's] expert opined that an attorney in [Cavacos'] position should have discovered the acreage problem and advised his client accordingly. He further opined that while the contract in the case *sub judice* was legally binding, a purchaser in [Sarwar's]

---

**2.** The trial judge, [Sarwar] and [Cavacos] all assumed the jury was the ultimate fact finder as to the trial regarding legal malpractice and the trial within a trial on the issue of rescission. Our opinion should not be read to approve or disapprove of this assumption.

position could have rescinded based on the acreage discrepancy. The judge considered this last statement to be contradictory, leaving the jury 'to come to its conclusion by conjecture.'

"Our response to the court's rationale is twofold. First, we see no contradiction in the expert's statement, for it is only from an otherwise legally enforceable contract that a party seeks the equitable relief of rescission. Second, there was no need for the expert's opinion on whether [Sarwar] could have rescinded the contract. Rather, as we have discussed, that issue turns on the factual question of whether the parties intended to contract in gross or by the acre. Since the facts and inferences when reviewed in the light most favorable to [Sarwar] reveal that a fact finder could conclude that [Sarwar] did not purchase in gross and that [Cavacos] was negligent in failing to discover the acreage discrepancy and report it to [Sarwar], [Sarwar] had a right to have his legal malpractice claim go to the jury so long as he had presented evidence of damages."

To us Cavacos frames two questions:

"1—Did the Court of Special Appeals improperly hold that the *equitable* issue of whether [Sarwar] would have been entitled to rescission, due to the acreage deficiency, should have been submitted to a *jury?*

"2—Was the trial judge's finding that [Sarwar] would not have been entitled to rescission, because the contract was a sale in gross, supported by the evidence and not clearly erroneous?" [emphasis by Cavacos]

We regard the first question as a non-issue because we find no holding of the Court of Special Appeals to that effect. There are indeed cases holding, as stated by Cavacos, "that where legal and equitable claims are joined in one action, the usual procedure is for legal claims to be tried by a jury and equitable claims decided by the court." *See, e.g., Phillips v. Kaplus,* 764 F.2d 807, 813 (11th Cir.1985); *Raulerson v. Metzger,* 375 So.2d 576, 577 (Fla.App.1979); *Farwell v. Neal,* 40 Mich.App. 351, 354, 198 N.W.2d 801, 803

(1972); *Sado v. Sado,* 299 N.Y.S.2d 743, 745, 32 A.D.2d 546, 546 (1969); *Sanguinetti v. Strecker,* 94 Nev. 200, 208, 577 P.2d 404, 409–10 (1978); and *Airfare, Inc. v. Greenville Airport Commission,* 249 S.C. 265, 269, 153 S.E.2d 846, 848 (1967). Since there was no such holding by the Court of Special Appeals we are not obliged to pass upon the point. We observe that the case was before the trial judge on a motion to dismiss at the end of the plaintiff's case under Rule 2–519(b) and if the determination of facts was not to be made by the jury, then the trial judge was authorized to "proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or [he] m[ight] decline to render judgment until the close of all the evidence." No findings of fact were made by the trial judge.

The second question presented by Cavacos is another non-issue because there was no finding by the trial judge that Sarwar would not have been entitled to rescission.

In passing upon the sufficiency of the evidence on a motion based upon Rule 2–519(b) it is important to bear in mind what Chief Judge Prescott said for the Court in *Fowler v. Smith,* 240 Md. 240, 213 A.2d 549 (1965):

"Negligence is a relative term and must be decided upon the facts of each particular case. Ordinarily it is a question of fact to be determined by the jury, and before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn. *Kantor v. Ash,* 215 Md. 285 [137 A.2d 661]. Cf. *Suman v. Hoffman,* 221 Md. 302 [157 A.2d 276]. And Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury. *Ford v. Bradford,* 213

Md. 534 [132 A.2d 488]. Cf. *Bernardi v. Roedel,* 225 Md. 17, 21 [168 A.2d 886]. However, the rule as above stated does not mean, as is illustrated by the adjudicated cases, that all cases where questions of alleged negligence are invoked must be submitted to a jury. The words 'legally sufficient' have significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value." 240 Md. at 246–47, 213 A.2d at 553–54. [emphasis in original]

To like effect see *Curley v. General Valet Service,* 270 Md. 248, 311 A.2d 231 (1973), where, after quoting from *Fowler,* Chief Judge Murphy said for the Court:

"The test of legal sufficiency, we have held, 'is whether the evidence serves to prove a fact or permits an inference of fact that could enable an ordinarily intelligent mind to draw a rational conclusion therefrom in support of the right of the plaintiff to recover.' *Stein v. Overlook Joint Venture,* 246 Md. 75, 81, 227 A.2d 226, 230 (1966 [1967])." 270 Md. at 264, 311 A.2d at 239–40.

In the just filed case of *Steele v. Goettee,* 313 Md. 11, 542 A.2d 847 (1987), we discussed the significance of the term "sale in gross" by quoting from *Kriel v. Cullison,* 165 Md. 402, 169 A. 203 (1933), where Judge Offutt said for the Court:

"A sale in gross, sometimes called a 'contract of hazard,' is where specific designated parcels of land are sold as a whole and there is no warranty, express or implied, as to quantity. 2 *Words and Phrases,* Third Series, page 446. In determining whether a sale is by the acre or in gross, as in other contracts, the intention of the parties is controlling and must be given effect. 27 *R.C.L.* 436; 39 *Cyc.* 1313, note 5.

"Where the language of the contract is clear, plain, and free from ambiguity, that intention must be gathered

from its four corners; but where it leaves the question in doubt, extrinsic evidence as to the surrounding circumstances and the situation of the parties is admissible to aid in its interpretation. *Ibid.*

"The mere fact that the acreage is specified in the contract does not conclude the question, and where it is apparent that the specification of quantity was not intended by the parties to be of the essence of the contract, but merely descriptive of the property, the sale will be considered as in gross, notwithstanding the specification (39 *Cyc.* 1313, note), especially where the specification is qualified by the words 'more or less.' *Tyson v. Hardesty*, 29 Md. 305; *Slothower v. Gordon*, 23 Md. 9; *Hall v. Mayhew*, 15 Md. 551; *Stull v. Hurtt*, 9 Gill. 446; *Hurt v. Stull*, 3 Md. Ch. 24." 165 Md. at 408, 169 A. at 205–06. *See also Witmer v. Bloom*, 265 Md. 173, 177–78, 288 A.2d 323, 325–26 (1972).

In *Kriel* the contract stated in pertinent part:

" '[A]ll those several tracts of land lying east of Hanover Turnpike Road, of Carroll County, State of Maryland, containing in the aggregate forty-five acres, more or less, and more particularly described as follows:

" '(1) A tract of twenty acres, more or less, lying on the east side of Hanover Turnpike Road between Greenmount and Hampstead.

" '(2) A tract of ten acres, more or less, lying on the Gross Mill Road.

" '(3) A tract of nine acres, more or less, lying at or near Rockbrook.

" '(4) A tract of five acres, more or less, lying in Greenmount.' " 165 Md. at 404, 169 A. at 204.

The Court further stated:

"In January, 1931, when the purchaser had the land described in that contract surveyed, it was found that the 'twenty acre' tract, known as the 'White Hall property,' actually contained 11.52 acres, of which 1.08 acres were subject to a railroad right of way, the 'five acre' tract known as the 'Dayhoff' lot, 7.13 acres, the 'ten acre'

tract known as the 'Worthington' lot, 10 acres, and the 'nine acre' tract known as 'Hoover's Lot,' 3.748 acres. The aggregate acreage of these four lots as estimated in the contract was 44 acres, while the actual acreage shown by the survey was 31.32 [acres], a deficiency of 12.68 acres." 165 Md. at 405, 169 A. at 204–05.

An action for specific performance was filed. Chief Judge Parke in the Circuit Court for Carroll County issued, as the Court put it, "a decree in favor of the vendor, in which the court directed the vendee to forthwith pay or bring into court the purchase money less an allowance of $561.50 for the deficiency, and that failing the payment or forthcoming of said money that the land be sold and the proceeds brought into court to be distributed under its direction." The appeal to this Court was by the vendee. In holding that the vendor was entitled to specific performance Judge Offutt said for the Court:

"[The vendee] has lived in the neighborhood of the property for eleven years, he knew its boundaries before the contract, and he had had its frontage measured. When asked to value it, it did not occur to him to value it by the acre, but he valued it by the foot. He knew when he signed the contract just what land he was buying, and he bought it not because it contained so many acres, but because it had a frontage of over 900 feet on the Hanover Road. So that, when his testimony is considered in connection with the use of the words 'more or less' in the contract, and with the further fact that all of the lots were identified as 'all and the same' property devised by the will of Jesse M. Cullison, Sr., the statement of quantity contained in the contract must be construed as descriptive and not as constituting a warranty." 165 Md. at 414, 169 A. at 208.

The Court further held the abatement allowed from the purchase price by the chancellor was adequate.

The Court of Special Appeals referred in its opinion to *Carozza v. Peacock Land Corp.*, 231 Md. 112, 188 A.2d 917 (1963), saying that in that case:

"[T]he Court of Appeals held the sale was not in gross even though the contract described the property as 'approximately 330 feet on York Road.' The facts peculiar to that situation revealed that the contract concerned valuable business property for which the high bid at a mortgage foreclosure sale was almost $300,000. Additionally, the advertisement specified which lots would be included and that the whole parcel fronted York Road and Timonium Road. From these facts, the Court concluded that the seller had represented and warranted a specific quantity of land to be sold regardless that the advertisement used the word 'approximately.' Thus, use of the word 'approximately' in [Sarwar's] contract does not automatically render the contract one for a sale in gross and any presumption that the parties intended to assume the risk of quantity may be rebutted by other evidence."

In footnote 2 of *Carozza,* Judge Prescott said for the Court:

"The appellees contend that the assertion that the property had a frontage 'approximately 330 feet on York Road' was 'merely descriptive as part of an offering in gross.' This Court, in *Kleiman v. Orion Knitting Mills,* 139 Md. 550 [115 A. 857], pointed out that the literal meaning of 'approximate' was 'near to,' and in ordinary usage was the equivalent to 'about,' 'a little more or less,' 'close.' And in *Baltimore Per. B. & L. Soc. v. Smith,* 54 Md. 187, the Court pointed out that the qualifying effect of the phrase 'about 65 acres' was that the parties did not wish to bind themselves as to the exact quantity of 65 acres, but that the number of acres mentioned was a 'near approximation' of the number agreed to be conveyed." 231 Md. at 118, 188 A.2d at 919.

In *Witmer,* 265 Md. at 180, 288 A.2d at 327, Judge Finan pointed out for the Court that in *Carozza* Judge Prescott summarized the holding in *Kriel* by stating, "[I]t is apparent that whether a sale is 'in gross' depends upon the facts

and circumstances of each particular case." This statement is important because here and in *Steele,* 313 Md. 11, 542 A.2d 847, we detected a tendency to a contention for a per se rule as to whether a sale is in gross.

In *Reigart v. Fisher,* 149 Md. 336, 131 A. 568 (1925), the contract called for "about 7 acres, more or less, and improved by a 15 room stucco cottage, a garage and other improvements." The seller owned but 4.764 acres. This Court said, "The evidence shows that the price of the two acres lot which plaintiffs were negotiating for to take the place of the shortage was $2,000, and that amount should have been allowed in abatement." 149 Md. at 348–49, 131 A. at 572.

We also find instructive *Baltimore Per. B. & L. Soc. v. Smith,* 54 Md. 187 (1880), to which Judge Prescott referred for the Court in *Carozza.* There the subject matter of the contract was

"all that property situate and lying in Calvert County, Md., containing about sixty-five acres, being a part of the property known as 'Solomon's Island,' and which was purchased by said Land Society from Philip M. Snowden, trustee, under a decree passed by the Circuit Court for Calvert County, in equity, in the case of the Baltimore Permanent Building and Land Society against Isaac Solomon and Wife, except eight or nine small lots, since sold by it, which lots were mentioned in leases made by said Solomon, after the mortgage given by him to said Society." 54 Md. at 196.

In due season the purchaser was advised that "there were found 48.08 acres in the entire island" and that "[a]fter deducting lots sold and leased previous to the agreement with [him], there were found thirty-six acres." The purchaser demanded a conveyance to him of 65 acres. He instituted action against the seller for breach of contract. The seller appealed from an adverse judgment in the Superior Court of Baltimore City. The Court took up the construction of the contract. Chief Judge Bartol said for the Court:

"Where the sale is for a gross sum, and there are qualifying words used such as 'more or less' or equivalent expressions, they have been held to import that quantity does not enter into the essence of the contract. *Stebbins v. Eddy,* 4 Mason, 419; *Jones v. Plater,* 2 Gill, 128; *Stull v. Hurtt,* 9 Gill, 446; *Hall v. Mayhew,* 15 Md. 551; *Slothower v. Gordon,* 23 Md. 9; *Tyson v. Hardesty,* 29 Md. 305. But what is the force and effect of the qualifying words 'about sixty-five acres' in this contract? Does it import that quantity was not a material part of the contract? and can the court so declare as a conclusion of law?

"We think not. The force of the qualifying word, we think, is simply that while the parties do not bind themselves to the precise quantity of sixty-five acres, it imports that the actual quantity is a near approximation to that mentioned, that is to say, within a fraction of an acre, or perhaps it might cover a discrepancy of one or two acres.

"It cannot be construed to mean that the parties were contracting without regard to the area, or that the appellee took the risk with regard to the quantity. He was not acquainted with the property, had never seen it. Its character and position, the mode in which it was occupied, and the purposes for which it was contemplated to be used, as shown by the evidence, preclude the idea that it was a purchase in gross without regard to quantity, and that the contract could be performed by conveying about half the number of acres mentioned in the contract. Thirty or thirty-six acres cannot be construed to be about sixty-five acres. In *Bourne v. Seymour,* 16 C.B. 336, a contract for the sale of 'about five hundred tons nitrate of soda' was construed to be a contract for the sale of five hundred tons, with such exception by the word 'about' as the variance usually found to exist in such cases, arising from some little difference in the mode of weighing, and that it was not performed by delivering four hundred tons.

"So in this case we construe the contract to be an agreement to sell and convey land containing sixty-five acres, with no other qualifications than such slight variation as might be found in its actual measurement. The appellee was not bound to accept a conveyance of thirty or thirty-six acres. The first prayer of the appellant was properly refused." *Id.* 54 Md. at 203–04.

Given the fact that, as the Court observed in *Fowler*, 240 Md. 240, 213 A.2d 549, but slight evidence of negligence is necessary to withstand a motion at the end of the plaintiff's case and the comment in *Carozza*, 231 Md. 112, 188 A.2d 917, that whether a sale is in gross depends upon the facts and circumstances of each particular case, we think there was enough evidence adduced by Sarwar in this case to withstand defendant Cavacos' motion. Had there been an action for specific performance against Sarwar a trial judge might have found under the facts and circumstances that the deviation was so great that Sarwar was not bound or he might have found Sarwar entitled to an abatement of the purchase price. Likewise and for similar reasons a trial judge might have found that Sarwar would have been successful in an action for rescission.

JUDGMENT AFFIRMED; PETITIONER TO PAY THE COSTS.