| iPETERS, Judge.
Willie Holmes appeals a judgment denying his claim for workers’ compensation and medical benefits on the basis that he failed to timely notify his employer, J.E. Merit Constructors, Inc., of injuries he sustained in a work-related accident. The employer has answered the appeal, contending that the workers’ compensation judge should not have rejected an additional ground for denying benefits.
DISCUSSION OF THE RECORD
Willie Holmes filed a claim for workers’ compensation and medical benefits, alleging that on July 31, 1995,[1] he sustained injuries when he tripped and fell while in the course and scope of his employment with J.E. Merit Constructors, Inc. (J.E. Merit). The issues presented to the workers’ compensation judge at trial were whether |2Mr. Holmes was injured as a result of an accident occurring in the course and scope of his employment with J.E. Merit, and if so, whether he was barred from claiming benefits by failing to give proper notice to J.E. Merit of his injuries, as required by La.R.S. 23:1301; whether he forfeited his right to benefits by failing to answer truthfully questions about his medical history on a second injury fund questionnaire, in violation of La.R.S. 23:1208.1; and whether he forfeited his right to benefits by violating La.R.S. 23:1208, regarding wilful, false statements or representations made for the purpose of obtaining benefits.
The workers’ compensation judge found that Mr. Holmes did sustain an accident in the course and scope of his employment, and this finding is not contested in this appeal. The workers’ compensation judge also found that Mr. Holmes did not violate the provisions of either La.R.S. 23:1208 or La.R.S. 23:1208.1 in such a manner as to require a forfeiture of benefits. However, the workers’ compensation judge did find that Mr. Holmes did not give timely notice of the injury to his employer, as required by La. R.S. 23:1301, and that the employer was prejudiced by the delay in giving notice. Based on this finding, judgment was rendered dismissing Mr. Holmes’ claim. Mr. Holmes has appealed this judgment, and J.E. Merit has *1128 answered the appeal, contending that the workers’ compensation judge erred in failing to find that Mr. Holmes should also be denied benefits for his violation of La.R.S. 23:1208.1.
At the time of the accident, Mr. Holmes was working for J.E. Merit as a cement finisher at an Exxon facility in Baton Rouge, Louisiana. In that capacity, he worked as a member of a four-man crew consisting of himself, Alvin Thierry, Howard Oubre, and Larry Lacour. James Stanley Stewart was the company supervisor for the crew and was the individual to whom all accidents were to be reported. In fact, J.E. Merit’s company policy required that accidents and injuries be reported. A “Notice of ^Compliance to Employees,” which notifies employees of the necessity of giving the employer notice of an injury, is posted in multiple locations at the J.E. Merit facility at the Exxon plant. Additionally, J.E. Merit held safety meetings, which-Mr. Holmes attended, in which reporting of accidents was discussed. Mr. Holmes admitted that he knew he was supposed to report accidents to Mr. Stewart.
The accident occurred as the crew was installing a form in a hole for a manhole setup. Mr. Holmes and Mr. Thierry were handing the form to Mr. Oubre and Mr. Lacour, who were in the hole, setting the form. As Mr. Holmes backed up, he tripped over some grating, and as he fell backwards, he may have hit a valve that was sticking up through the grating. Mr. Thierry testified that he did not see Mr. Holmes fall but that when he turned around, Mr. Holmes was lying down, so he “hollered, [‘][L]ook, [Mr. Holmes] fell.[’]” He further testified that as he helped Mr. Holmes up he asked if he had been injured and Mr. Holmes responded that he had not. After the accident, the crew continued working.
Mr. Holmes acknowledged that he did not follow company policy in that he did not report the accident on the day it occurred. He failed to do so because he did not think that he had hurt himself. However, by that evening, Mr. Holmes was suffering pain- in his knee and back. He returned to work the next day, but he still did not report the accident. For the next few weeks, he continued working, but he eventually asked Mr. Stewart to lay him off because he could no longer do his job. Even then, he did not inform Mr. Stewart of the connection between the accident and his quitting work. Mr. Holmes applied for and obtained unemployment benefits, which he received through May 11,1996.
At the time of the accident, Mr. Holmes was fifty-nine years old, and he had suffered from arthritis in his left knee and wrist for a number of years before the 14accident. However, the last time he had sought medical attention for his arthritis was one to two years before July of 1995. Generally, he treated his arthritis pain with over-the-counter medications, and at no time did his pain prevent him from doing his job.
Mr. Holmes sought medical treatment for injuries in connection with the July 1995 accident on August 5, 1995. Thinking his problem after the accident was arthritis, he went to Dr. Sylvan J. Manuel, a Eunice, Louisiana physician, who had treated him in the past for arthritis. Dr. Manuel noted in his records that Mr. Holmes complained of back pain. He saw Mr. Holmes again on August 24 and August 28, 1995, and on those occasions, Mr. Holmes was complaining of pain in the left leg all the way down to the ankle. Dr. Manuel was concerned about the possibility of disc disease or sciatica and recommended that Mr. Holmes see an orthopedist. He did not see Mr. Holmes again until April 1, 1996, at which time Mr. Holmes was complaining of cramps in his left leg and an inability to walk.
Mr. Holmes first gave a history of the work accident to Dr. Samuel J. Stagg, Jr., another Eunice, Louisiana physician, on October 11, 1995. Mr. Holmes complained of pain in his left lower back that went down his left leg. Dr. Stagg sent Mr. Holmes to a local hospital, where he underwent a lumbar CT scan, lumbar X-ray, and bone scan. These tests revealed, among other things, the presence of arthritic changes and degenerative disc disease. After two more visits, Dr. Stagg referred Mr. Holmes to Dr. Douglas W. McKay, a specialist in orthopedic surgery and rehabilitative medicine, whose office was also in Eunice, Louisiana.
*1129 Mr. Holmes first saw Dr. McKay on November 29, 1995, at which time Mr. Holmes completed a medical history form wherein he described the on-the-job accident as being the onset of his current complaints. He also related the work accident to the doctor at the time of the examination. Mr. Holmes expressed to Dr. McKay that he had |5suffered from pain in his left leg down to his foot ever since the accident. Dr. McKay found no muscle spasm in Mr. Holmes’ back, and Mr. Holmes specifically denied having any form of back pain. According to Dr. McKay, the initial X-rays of the back revealed “a severe degree of osteoarthritis that involved all the way from L2 to the sacrum with collapsed disc, vacuum disc and whatnot.” With such a finding, Dr. McKay was surprised that Mr. Holmes seemed to have no back pain. On December 5,1995, Mr. Holmes underwent an X-ray of his pelvis, which revealed marked degenerative changes in the facet joints at L5-S1 bilaterally and anterior osteophytes involving the vertebral bodies of L3-5. On February 16, 1996, Mr. Holmes underwent a myelogram and post-myelogram CT scan. The tests results included marked degenerative changes anteriorly at all levels and marked degenerative changes bilaterally at virtually all levels, a concentric disc bulge at L2-3, a concentric disc bulge with anterior indentation of the thecal sac at L3-4, and a vacuum disc (or air in the disc) and some concentric disc bulging with a small amount of anterior disc bulging at L4-5.
On his April .26, 1996 visit to Dr. McKay, Mr. Holmes began complaining of knee pain. Dr. McKay could not explain why Mr. Holmes began having trouble with his knee at that late date except that he thought Mr. Holmes was “confused about giving a good history.” Mr. Holmes’ knee X-rays revealed severe osteoarthritis of the knee and complete loss of the medial compartment cartilage. Mr. Holmes last saw Dr. McKay on August 26, 1996. Dr. McKay diagnosed Mr. Holmes as having a “badly” arthritic knee and a “bad” arthritic back. The doctor was of the opinion that both of these conditions were present prior to July of 1995 but that the accident could have aggravated the conditions. According to Dr. McKay, most of Mr. Holmes’ back problems were arthritic in nature, but he noted that the disc bulge at L4-5 would be a ^reason for Mr. Holmes’ leg pain. Dr. McKay indicated that the disc bulge at that level may have been recent in origin.
OPINION
At trial, the parties stipulated that Mr. Holmes was employed by J.E. Merit at the time of the accident and that based on his salary, the appropriate temporary total disability benefit would be $330.00 per week. They further stipulated that Mr. Holmes was either working for J.E. Merit or drawing unemployment benefits from the date of the accident until May 11, 1996, and that the appropriate supplemental earnings benefit rate after May 11, 1996, would be the same as the temporary total disability benefit rate, or $330.00 per week. J.E. Merit further stipulated that it had no evidence to suggest that Mr. Holmes was not eligible for supplemental earnings benefits after May 11, 1996, assuming that the workers’ compensation judge found that a compensable accident occurred and assuming that the various statutory defenses raised to deny benefits were rejected.

Notice of Current Injury

The first time anyone working for J.E. Merit, other than the work crew itself, had knowledge of the accident was when the employer received notice of the claim filed by Mr. Holmes on May 20, 1996. The workers’ compensation judge concluded that Mr. Holmes’ failure to give notice of the accident and his injury within thirty days of the accident prejudiced his employer’s ability to respond and that, therefore, he was barred from receiving benefits.
La.R.S. 23:1301 provides in part that “[n]o proceeding under this Chapter for compensation shall be maintained unless notice of the injury has been given to the employer within thirty days after the date of the injury or death.” However, the lack of notice or the delay in giving notice is not a bar to an employee receiving workers’ hcompensation benefits “if it is shown that the employer, or his , agent or representative, had knowledge of the accident or that the employer has not *1130 been prejudiced by such delay or lack of notice.” La.R.S. 23:1305.
Mr. Holmes acknowledged that the appropriate individual to give notice to pursuant to company policy was Mr. Stewart. Mr. Stewart indicated that he was not aware of the accident until after Mr. Holmes filed his claim some ten months after the accident. Although Mr. Holmes had obviously made the connection between his pain and the work accident at least by October 11, 1995, because he related the history to Dr. Stagg at that time, he still failed to report the accident and his injuries to his employer. In fact, in his appellate brief, Mr. Holmes concedes that notice of the injury was not given to J.E. Merit until after suit was filed. However, Mr. Holmes argues that since his entire work crew, including Mr. Lacour, the lead carpenter of the crew, was present at the time of the accident, J.E. Merit had notice of the accident through these employees.
We pretermit addressing the more difficult issue of whether Oubre and Lacour had knowledge of the accident and whether their knowledge of the accident, if any, or Thier-ry’s knowledge of the accident constituted notice to J.E. Merit for purposes of La.R.S. 23:1301. Rather, we hold that the workers’ compensation judge was clearly wrong in concluding that J.E. Merit suffered prejudice because of Mr. Holmes’ delay in giving notice, and since J.E. Merit did not suffer prejudice, under La.R.S. 23:1305 the delay in giving notice does not bar Mr. Holmes’ claim.
Specifically, the workers’ compensation judge found that J.E. Merit was prejudiced in that it did not have a chance to have Mr. Holmes examined by its physician. The workers’ compensation judge was particularly concerned about prejudice to J.E. Merit’s ability to present evidence regarding causation.
IgWhen Mr. Stewart was questioned at the hearing about what he would have done had he known about the accident, he testified as follows:
Well, the procedures that we have is [sic] — it doesn’t make any difference how minor the injury is, or, ... what happens, that we take it to our safety department ... they got the expertise people [sic] ... can tell ... if you got a twisted knee, a broke [sic] knee, or whatever happened, and then they will take them on to our physicians and they can further experiment to [sic] what has happened with them ... or the extent of the injury_
This court has held that the remote possibility that the employer might have given the employee better medical treatment or that an earlier investigation might have been of more benefit to the employer is not sufficient to establish such material prejudice to an employer as would bar a workers’ compensation suit on the basis of failure to give timely notice of an injury. See Bolton v. Angelle Concrete, 93-667 (La.App. 3 Cir. 2/2/94); 631 So.2d 110. Further, J.E. Merit did not present evidence that it even sought an examination of Mr. Holmes by a physician of its choice or an independent medical examination after it had notice of the accident. Therefore, the workers’ compensation judge was clearly wrong in finding that Mr. Holmes’ failure to give notice materially prejudiced J.E. Merit.

Notice of Prior Injuries

La.R.S. 23:1208.1 provides:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee’s forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer’s ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker’s compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
|9On February 23, 1995, Mr. Holmes signed a second injury fund questionnaire for *1131 his employment with J.E. Merit. The questionnaire asked, “Are you bothered with or have you ever had the following,” and contained a list of items with blanks for checking “YES” or “NO.” Mr. Holmes marked “NO” for arthritis and knee problems, despite being aware that he had arthritis and knee problems before the accident. The workers’ compensation judge, noting that Mr. Holmes had only a fifth-grade education, found that the questionnaire was poorly written in that a person could answer the questions by either saying “YES” he suffered from the listed condition in the past or “NO” he was not suffering from the condition currently. In the ease of Mr. Holmes, either answer would have been accurate, depending on whether he was answering the first half of the question or the second half. J.E. Merit contends that the workers’ compensation judge committed manifest error in reaching this conclusion regarding Mr. Holmes’ significant preexisting arthritis.
Dr. McKay diagnosed Mr. Holmes as having a “badly” arthritic knee and a “bad” arthritic back and indicated that both arthritic conditions predated the accident. Mr. Holmes admitted awareness of arthritis in his left knee and wrist before the accident, and his wife’s testimony confirmed that he was aware of the arthritis. However, while Mr. Holmes indicated that he was aware of arthritis in his wrist and knee prior to the accident, neither he nor his wife testified that Mr. Holmes was aware that he had arthritis in his back prior to the accident, and the medical evidence in the record does not disclose that Mr. Holmes was diagnosed with an arthritic back prior to the accident. Additionally, Dr. McKay noted that the disc bulge at L4-5 would be a reason for Mr. Holmes’ leg pain, and the doctor indicated that the disc bulge at that level may have been recent in origin. Thus, regarding his back injury, the evidence | ^indicates that Mr. Holmes did not fail to answer truthfully the inquiry in that regard.
In any event, we agree with the workers’ compensation judge that as applied to the circumstances of this case, the questionnaire was ambiguous. As noted by the workers’ compensation judge, Mr. Holmes had only a fifth-grade education. He testified that no one explained the form to him and that at the time he filled out the questionnaire, he was not having any problem with arthritis or his knee and that he was not taking any medicine for either arthritis or his knee. In fact, Mr. Holmes testified that he did not recall having had any problems with his left knee since he had seen Dr. Manuel a year and a half to two years before the accident, and he had not seen a doctor in the twenty years before the accident for any problems with his back.
La.R.S. 23:1208.1 should be strictly construed against the employer, who is presumed to be in a better position to prevent accidents in the workplace through its hiring and firing decisions than is the worker, who seldom has the luxury of opting out of the workplace. Pickett v. Stine Lumber Co., 93-1534 (La.App. 3 Cir. 6/1/94); 640 So.2d 769. In King v. Grand Cove Nursing Home, 93-779, p. 5-6 (La.App. 3 Cir. 3/9/94); 640 So.2d 348, 351-52, writ denied, 94-0865 (La.5/13/94); 641 So.2d 204, adopting the workers’ compensation judge’s findings and analysis, we quoted as follows:
“When there is any legitimate ambiguity concerning the questionnaire or inquiries into an employee’s medical history, a court should lean favorably toward the employee in determining whether he knowlingly [sic] failed to answer the questionnaire truthfully. In other words, for the sanction of La.R.S. 23:1208.1 to apply, the employer should have the burden to prove that the questionnaire or inquiries into an employee’s medical history were clear and unambiguous, and that conditions were such that an employee fully understood that his answers had to be thorough and complete.
[[Image here]]
“There are sound reasons to require an employer to explain a medical history questionnaire to an employee, who is ofter [sic] uneducated. Conceivably, it is to an employer’s advantage that the |uclaimant not answer a medical history form correctly or completely because in that case it would not owe any workers’ compensation at all for a reinjury, regardless of the circumstances. The potential for abuse *1132 would be great and the best safeguard would be to require or to find that it is implicit within the meaning of 1208.1 that the employer present the medical history questionnaire to the prospective employee in a thorough manner.”
We find no manifest error in the workers’ compensation judge’s findings in this regard.

Compensation Benefits and Medical Expenses

Mr. Holmes seeks payment of temporary total disability benefits from May 12, 1996, the date he stopped receiving unemployment benefits. At the hearing, J.E. Merit stipulated to supplemental earnings benefits at the temporary total disability rate. While Dr. McKay was of the opinion that Mr. Holmes would be unable to do manual labor, he did not rule out other types of employment. Thus, we award Mr. Holmes supplemental earnings benefits at the temporary total disability rate from May 12,1996.
Mr. Holmes also seeks the payment of all medical bills introduced as “Plaintiffs Exhibit 1.” J.E. Merit has not put on evidence to the contrary, and therefore, we also award Mr. Holmes all past-due medical expenses incurred as a result of the work accident, as contained in “Plaintiffs Exhibit 1.” Additionally, Mr. Holmes seeks an order for the payment of all further treatment recommended by Dr. McKay. While an award for medical bills cannot occur until the expenses are actually incurred, we may reserve to a claimant the right to claim reimbursement for future medical expenses. See Anderson v. Biedenharn Bottling Group, 95-646 (La.App. 3 Cir. 11/2/95); 664 So.2d 588. Thus, we reserve to Mr. Holmes the right to claim reimbursement for future medical expenses.
DISPOSITION
For the foregoing reasons, we reverse the dismissal of Mr. Holmes’ claim and | i^award supplemental earnings benefits at the temporary total disability rate from May 12, 1996. We award Mr. Holmes past medical expenses incurred as a result of the accident, as listed in “Plaintiffs Exhibit 1.” We reserve to Mr. Holmes the right to claim reimbursement for future medical expenses. We assess costs of this appeal to J.E. Merit.
REVERSED AND RENDERED.
AMY, J., concurs and assigns written reasons.

. It is not clear that the accident occurred on July 31, 1995, but it appears that the accident did occur sometime in July of 1995.