982 A.2d 938

**Melody ELSTE**

v.

**ISG SPARROWS POINT, LLC, et al.**

**No. 1625, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Oct. 29, 2009.

636

Jennifer L. Lilly (Roger A. Doumar, Peter G. Angelos, on brief), Baltimore, for Appellant.

Robert C. Erlandson (Hillary Lane Zinsmeister, Godwin, Erlandson, MacLaughlin, Vernon & Daney, LLC, on brief), Ellicott City, for Appellee.

Panel: DEBORAH S. EYLER, MEREDITH and KEHOE, JJ.

EYLER, DEBORAH S., J.

This appeal arises from an order of the Workers' Compensation Commission ("Commission") awarding Melody J. Elste, the appellant, temporary total disability benefits for an injury suffered in the course of her employment with ISG Sparrows Point, LLC ("Sparrows Point"). Sparrows Point and its insurer, American Zurich Insurance Company, collectively, the appellees, petitioned for judicial review in the Circuit Court for Baltimore County on the issues of accidental injury and notice. A jury found that Elste's injury was caused by a workplace accident but that she did not give Sparrows Point timely notice of her injury. On that ground, Elste's claim was barred, and judgment was entered for the appellees.

On appeal, Elste presents a single question for review, which we paraphrase:

Did the trial court err in denying her motions for judgment and motion for judgment notwithstanding the verdict ("JNOV") when the employer presented no evidence that it suffered any actual prejudice as a result of a nine-day delay in receiving notice of the injury?

For the reasons that follow, we answer this question in the affirmative, and therefore shall reverse the judgment of the

circuit court and remand with instructions to affirm the order of the Commission.

## FACTS AND PROCEEDINGS

On July 27, 2006, Elste, an employee of Sparrows Point for about 25 years, completed her normally scheduled 12–hour shift as a pit crane operator, and started working a four-hour overtime shift with the "safety team." As part of her overtime duties, she was distributing water and Gatorade to steel workers. She and a co-worker, Sharon Pritchard, rode in a company truck up a ramp to reach the "L Furnace," where they were to distribute the drinks. Pritchard was driving and Elste was in the passenger's seat. When Elste got out of the truck and reached into the back of the vehicle to grab a bag of Gatorade drinks, her foot slipped on the gravel surface of the road, causing her to twist her right knee.

Pritchard was still in the truck when Elste slipped, and did not see the accident. According to Elste, James Barrett, her supervisor, was walking up the ramp and in plain view when the accident occurred. Elste claimed she told Barrett about the injury at that time. When asked about the accident before the Commission, however, Barrett did not recall seeing it or being told about it.

Following the accident, Elste was "limping a little bit." Nevertheless, she told Pritchard her knee "was just a little sore" and that she was fine and did not need to go to the dispensary for treatment.

Elste subsequently experienced some swelling in her knee. She was able to complete a 16–hour shift the next day, however, and she worked her full scheduled 48–hour workweek the next week. (As a crane operator, Elste was seated for most of her shift.) On Monday, August 7, 2006, Elste went on a one-week vacation to a "camping cabin" in St. Mary's County. During the vacation, her knee became increasingly swollen. On Monday, August 14, the day after returning from her vacation, Elste called Kenneth Lippman, M.D., an orthopedic surgeon, to schedule an appointment. She saw Dr.

Lippman early in the afternoon on Tuesday, August 15. He diagnosed her as having a "medial meniscal tear" and "effusion." Immediately after her appointment with Dr. Lippman, Elste went to the Sparrows Point dispensary and filled out an Accident Intake Form.

About a month later, on September 14, 2006, Elste underwent surgery to repair her right knee. An arthroscopic examination performed before the surgery revealed a "chondral fracturing" of the patella and trochlea in addition to the previously diagnosed injuries.

On October 18, 2006, Elste filed a claim for benefits with the Workers' Compensation Commission for the injury to her right knee. The Commission held a hearing on March 6, 2007, and issued a written decision on March 22, 2007. The Commission listed the issues before it as:

1. Notice.

2. Did the employee sustain an accidental personal injury arising out of and in the course of employment?

3. Is the disability of the employee the result of an accidental personal injury arising out and in the course of employment?

4. Temporary total disability benefits.

The Commission found in favor of Elste on all issues: notice was timely given; Elste sustained an accidental injury to her right knee that arose out of and happened in the course of her employment; her disability resulted from that injury; and she was temporarily totally disabled. Consequently, the Commission ordered the appellees to pay all causally related medical expenses and temporary total disability benefits of $669 per week beginning September 14, 2006, and continuing for the duration of the disability.[1]

The appellees sought judicial review in the Circuit Court for Baltimore County. A jury trial was held on June 12, 2008. The issues for decision were whether the injury to Elste's

---

1. The Commission also awarded a lump sum counsel fee of $1,672.50.

right knee arose out of and happened in the course of her employment and whether she gave Sparrows Point timely notice of her injury. Elste moved for judgment at the close of the appellees' case and at the close of all evidence. The court denied both motions and submitted the case to the jury for decision. The jury returned a mixed verdict. As noted, it found in favor of Elste on the issue of accidental injury but concluded that she did not give timely notice to Sparrows Point. Judgment was entered in favor of the appellees based on the notice finding. Elste moved for JNOV or, alternatively, for a new trial. The court denied the motion, and this appeal followed.

Additional facts are provided below as pertinent to our discussion.

## DISCUSSION

### A.

The notice requirement for workplace injuries is codified in Md.Code (2008 Repl.Vol., 2009 Supp.), section 9–704 of the Labor and Employment Article ("LE"), which provides in pertinent part:

(b) *Notice required.*—If a covered employee [2] is injured or dies due to an accidental personal injury, oral or written notice shall be given to the employer:

 (1) for injury, within 10 days after the accidental personal injury[.]

* * *

(d) *Failure to give notice.*—Unless excused by the Commission under § 9–706 of this subtitle, failure to give notice bars a claim under this title.

LE section 9–706 in turn provides:

---

**2.** "covered employee" is "an individual . . . in the service of an employer under an express or implied contract of apprenticeship or hire." LE § 9–202(a). It is undisputed that Elste was a covered employee.

(a) *Excused by Commission.*—The Commission shall excuse a failure to comply with the notice requirement of § 9–704 . . . of this subtitle if the Commission finds that:

(1) there was a sufficient reason for the failure to comply; or

(2) the employer or its insurer has not been prejudiced by the failure to comply.

(c) *Burden of proof.*—The employer or its insurer has the burden of proving that it has been prejudiced by the failure to comply with the notice requirement.

Although not cited in either of the parties' briefs, LE section 9–702 also is relevant. It provides that, "[a]bsent substantial evidence to the contrary, in a proceeding for the enforcement of a [workers' compensation claim], it is presumed that . . . sufficient notice was given to the employer." Thus, under this statutory scheme, Elste was required to report her injury to Sparrows Point within ten days of July 27, 2006; however, in the proceeding before the Commission, notice was presumed sufficient and the Commission was required to excuse insufficient notice unless the appellees proved prejudice (or the Commission found a sufficient reason for the failure to comply with the notice requirement).

██ The Commission's March 22, 2007 order states only that notice was timely filed, and does not specify whether the Commission found that Elste gave sufficient notice within the ten-day period following her accident, or whether the Commission excused her failure to do so under LE section 9–706(a). In any event, LE section 9–745(b) provides that on appeal "the decision of the Commission is presumed to be prima facie correct" and "the party challenging the decision has the burden of proof." Thus, in their action for judicial review in the circuit court, the appellees bore the burden to prove that Elste did not comply with LE section 9–704(b)(1) and that they suffered prejudice as a result.

## B.

Before the jury, the appellees sought to discredit Elste's assertion that she gave oral notice to Barrett immediately following the injury, and argued that her untimely written notice prejudiced them because they could not evaluate whether her knee injury occurred on the job or while she was on vacation.[3] The appellees called Elste and Barrett as witnesses during their case-in-chief. In her testimony, Elste acknowledged that, at the time of the injury, she knew that Sparrows Point had an internal policy requiring each employee to immediately report a workplace injury to his or her supervisor and to go to the dispensary to fill out an Accident Intake Form. She did not dispute that she had failed to report to the dispensary in accordance with company policy. She insisted, however, that she told Barrett about the injury immediately after it happened. With respect to her failure to go to the dispensary on the day of the accident, she explained, "I'm a steel worker. You twist things. You bump things. You just don't report everything. I thought, well I just twisted it. It will be fine."

As he had before the Commission, Barrett testified that he did not recall seeing Elste injure herself on the day in question or her telling him of an injury. He also did not recall whether he was in her vicinity at the time of the accident. When pressed on cross-examination to clarify whether he was denying that Elste orally had reported the injury, or was saying he simply did not remember, Barrett responded, "I would have to say that I don't recall that she mentioned it to me, and I also have to say at the same time that, if she did something and if it was very noticeable or it was brought to

---

3. The appellees also introduced evidence about Elste's "camping" vacation to suggest that her injury was not a workplace accident. Although our focus here is solely limited to the issue of notice, any evidence that the right knee injury occurred while Elste was on vacation rather than on the job also goes to the question whether Sparrows Point was prejudiced by untimely notice of the injury. Thus, the issues of notice and accidental injury are somewhat interrelated. As noted above, the jury found that the injury happened in the workplace.

my attention, I would have remembered." Barrett also stated that it is his practice when an employee is injured on the job to "stop what [he is] doing and write it up, and [the injured employee would] go to the clinic right away." He then would evaluate "what actually happened . . . [s]o, if there was something that was actually wrong [it could be corrected] at that time."

At the close of the appellees' case, Elste moved for judgment. Through counsel, she acknowledged that her written notice was untimely, but argued that timely oral notice was given. She argued that, even if the notice given were untimely, the appellees had produced "no evidence whatsoever" to show that they were prejudiced as a result. She also argued that the appellees had not produced any evidence that she did not suffer a workplace accident. Counsel for the appellees responded that Barrett's inability to recall what happened on the day in question was evidence of prejudice, and that proving that an injury did not occur was an impossible burden and unnecessary from a legal standpoint.

The court then pressed the appellees on the issue of prejudice, and the following ensued:

THE COURT: Isn't the issue whether there was prejudice by the delay to August 15th [the date the appellant filed written notice]?

[COUNSEL FOR APPELLEES]: That's true.

THE COURT: What's the evidence of prejudice?

[COUNSEL FOR APPELLEES]: Mr. Barrett getting on the witness stand and saying, I can't tell what happened. There was no way for him to possibly investigate something like that.

THE COURT: Well, by August 15th there would have been-by August 15th there would have been at the latest.

[COUNSEL FOR APPELLEES]: Not necessarily. Not necessarily. Again, that's the reason why the company and the law requires that something be done the date that it happens or within a reasonable time after, and this is beyond the ten day period.

THE COURT: I guess my question is, what's the evidence of prejudice to your client by not filing within ten days? Would have been what? August 7th I guess. August 7th would have been ten days. So what is the prejudice for the eight day delay? [4]

[COUNSEL FOR APPELLEES]: We don't know what her condition was before she went on her camping trip. All right? All we are dealing with is that someone reports an incident in writing for the first time after she goes on a camping trip.

Now, if she had reported that incident that day, we could have had her evaluated. I mean, this is basically a jury argument here, but we could have had her evaluated by somebody at the dispensary in effect is what they normally do [sic], and this is done, and there's no way we can possibly do that.

THE COURT: All right.

Elste's lawyer responded that this was a "medical issue" and reiterated that the appellees had presented no testimony showing prejudice, including from any delay in the investigation of the accident. When the judge commented that the appellees might have been prejudiced for the eight-day period in which they could not conduct a medical examination of Elste, Elste's lawyer noted that there was no dispute that she had suffered a knee injury and there was no evidence that she had injured herself in any manner other than in a workplace accident. The court nevertheless found "enough evidence to withstand the motion for judgment," and denied it.

Elste called Pritchard as her sole witness. Pritchard corroborated Elste's testimony that Barrett was approaching the truck when the injury occurred, and further testified that both she and Elste told Barrett about the injury. On cross-examination, Pritchard asserted that at Sparrows Point injured employees do not have to go to the dispensary "if they

---

4. Ten days from July 27 was August 6, which fell on a Sunday in 2006. As noted, Elste gave written notice on Tuesday, August 15, 2006.

don't want to right then and there," and "[i]t's the manager's responsibility to fill out a first incident report." When asked if it was also the employee's responsibility to fill out an incident report, she answered, "We did fill out one." On redirect, Pritchard was asked when she submitted that report. She responded that she thought it "probably" was the Monday following the accident, which would have been July 31, and that she "took some notes" on a green piece of paper and put it in Richard Vash's mailbox.

In rebuttal, the appellees called Craig Dolan, who explained that his responsibility was to collect accident reports from the dispensary on a daily basis and follow up with the safety and operating departments to obtain for the record any additional information pertinent to the accident. Dolan testified that he had not seen any report of Elste's knee injury other than the one she submitted on August 15, 2006. Dolan also explained that at the relevant time period Vash was the division manager for the steel-making department, and that he did not look at Vash's files because he did not have access to them.

Elste moved for judgment once more at the close of all the evidence. Her counsel renewed his earlier arguments and added that Pritchard's testimony showed that written notice was timely given. The appellees also renewed their prior arguments, and added that this was the first anyone had heard of Pritchard's making a report, and no one actually had seen the document she had referred to. The court denied the motion.

As stated above, the jury found in Elste's favor on the workplace injury question and against her on the notice question. Thereafter, Elste filed a motion for JNOV. Elste argued that, on the facts most favorable to the appellees, they did not meet their burden to prove prejudice as a result of her delay in giving notice. The appellees responded that the delay prevented them from evaluating Elste's condition prior to the camping trip, thus precluding a "before and after" comparison of her injury. The appellees asserted that reasonable jurors could infer prejudice from those facts alone.

At an August 11, 2008 hearing on the JNOV motion, the court asked counsel for the appellees, "What was the evidence with respect to the employer-insurer's first medical examination of the claimant? When did that take place?" Counsel answered that the appellees' first medical evaluation of Elste's right knee injury did not occur until after her surgery, which was performed in mid-September, 2006, about six weeks after the accident. The following exchange then ensued:

THE COURT: Your argument is that she—or I mean, your client could have done all these things had she reported promptly—

[COUNSEL FOR APPELLEES]: Right.

THE COURT:—within the ten days. Yet, after it was reported on the 19th day, nine days after the day she's supposed to report, there was no such examination done until some period of time after the surgery. So there wasn't any exigency to have her examined by a doctor.

[COUNSEL FOR APPELLEES]: Well the exigency is that we have a plant doctor right on the facility.

THE COURT: I understand that.

[COUNSEL FOR APPELLEES]: The doctor could have examined her right after this incident.

THE COURT: But the doctor didn't examine her when your client—

[COUNSEL FOR APPELLEES]: That's right.

THE COURT:—first learned of the injury or after?

Counsel for the appellees again confirmed that Elste was not examined when she gave written notice on August 15, 2006, but argued that "after the camping trip it really doesn't make any difference what her knee condition was because we didn't know what her condition was before she [left]."

The court held the motion *sub curia.* It subsequently denied it by written order dated August 14, 2008.

## C.

Elste contends the circuit court erred in denying her motions for judgment and for JNOV on the issue of notice because, assuming the notice facts most favorable to the appellees—that the only notice given was by writing on August 15, 2006—the appellees presented no evidence that they were prejudiced by that eight-day delay. Therefore, the appellees failed to generate a jury question on the notice issue. Specifically, Elste argues that, while the appellees made "broad conclusory statements" that the delay in giving notice hindered their investigation, they did not provide any substantive evidence to support their assertion, or any evidence that an investigation even occurred.

The appellees respond that Elste's delay in giving notice until after her vacation was in and of itself sufficient evidence from which reasonable jurors could infer prejudice, as they (the appellees) were unable to evaluate the condition of Elste's knee before and after her camping trip. The appellees also note that, had Elste complied with company policy and reported the injury at the time it occurred, they could have immediately investigated the circumstances surrounding the accident itself. By the time notice was given, the scene of the accident could not be assessed.

 In deciding a motion for judgment in a jury trial, the trial court must "consider all evidence and inferences in the light most favorable to the party against whom the motion is made." Md. Rule 2–519(b). The case must be submitted to the jury for decision if there is any legally sufficient evidence to support the claim. *Cavacos v. Sarwar*, 313 Md. 248, 258, 545 A.2d 46 (1988). " 'The words "legally sufficient" have significance. They mean that a party who has the burden of [proof] ... cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture....' " *Id.* at 259, 545 A.2d 46 (quoting *Fowler v. Smith*, 240 Md. 240, 246–47, 213 A.2d 549 (1965)). Our appellate review is *de novo;* we likewise consider all evidence and inferences in a light most favorable to the

non-moving party, here the appellees, and must affirm the trial court's decision " 'if there is any evidence, no matter how slight, legally sufficient to generate a jury question.' " *Wash. Metro. Area Transit Auth. v. Reading,* 109 Md.App. 89, 99, 674 A.2d 44 (1996) (quoting *James v. General Motors Corp.,* 74 Md.App. 479, 484, 538 A.2d 782, *cert. denied,* 313 Md. 7, 542 A.2d 844 (1988)).

■ Similarly, "[a] party is entitled to judgment notwithstanding the verdict . . . when the evidence at the close of the case, taken in the light most favorable to the nonmoving party, does not legally support the nonmoving party's claim or defense." *Giant Food, Inc. v. Booker,* 152 Md.App. 166, 177, 831 A.2d 481, *cert. denied,* 378 Md. 614, 837 A.2d 926 (2003) (quoting *Jacobs v. Flynn,* 131 Md.App. 342, 353–54, 749 A.2d 174 (2000)). *See also* Md. Rule 2–532. In *Giant,* we explained the standard of review of the denial of a JNOV motion as follows:

> If the record discloses any legally relevant and competent evidence, however slight, from which the jury could rationally find as it did, we must affirm the denial of the motion. If the evidence, however, does not rise above speculation, hypothesis, and conjecture, and does not lead to the jury's conclusion with reasonable certainty, then the denial of the JNOV was error. Nevertheless, "only where reasonable minds cannot differ in the conclusions to be drawn from the evidence, after it has been viewed in the light most favorable to the [nonmoving party], does the issue in question become one of law for the court and not of fact for the jury."

*Giant,* 152 Md.App. at 177–78, 831 A.2d 481 (citations omitted).

■ In the case at bar, the parties agree that, in the circuit court, the appellees bore the burden of production and persuasion on both issues (workplace injury and notice). The parties' dispute centers on whether the evidence adduced was legally sufficient to satisfy the appellees' burden of production on the issue of prejudice under LE section 9–706. Initially, we note that this case came before the circuit court as an

essentially *de novo* trial under LE section 9–745(d), as opposed to the more traditional review of an administrative agency decision under LE section 9–745(e). *See S.B. Thomas, Inc. v. Thompson,* 114 Md.App. 357, 364–67, 689 A.2d 1301 (1997) (explaining the difference between the two alternative modes of appeal from a decision by the Commission). In an "essential trial *de novo,*" as opposed to a true trial *de novo,* the presumptively correct decision of the Commission "is admissible as an item of evidence and is the proper subject of a jury instruction. *Holman v. Kelly Catering,* 334 Md. 480, 639 A.2d 701 (1994). It is an evidentiary fact that may well tip the scales of persuasion." *Id.* at 366, 639 A.2d 701; *see* LE § 9–745(b)(1) (stating that "[i]n each court proceeding under this title ... the decision of the Commission is presumed to be prima facie correct").

 Moreover, in an "essential trial *de novo,*" when the employee has prevailed before the Commission and the employer appeals:

It is then that the allocation of [the burden of production and persuasion] switches. In such a case, the decision of the Commission is, *ipso facto,* the [employee's] *prima facie* case and the [employee] runs no risk of suffering a directed verdict from the insufficiency of his evidence before the circuit court. Indeed, the successful [employee], as the non-moving party on appeal, has no burden of production. The qualifying language also gives the successful [employee] below the edge—the tie-breaker—if the mind of the fact finder (judge or jury) is in a state of even balance. The tie goes to the winner below.[5]

*General Motors Corp. v. Bark,* 79 Md.App. 68, 80, 555 A.2d 542 (1989).

The appellees acknowledge this shift in the evidentiary burdens, but they further quote *Bark* to note that the burden of production

---

5. Of course, in the above situation, the burden to show prejudice from a failure to comply with the notice requirement does not shift on appeal because it is with the employer from the start. LE § 9–706(b).

can easily be satisfied simply by offering to the trial court the record from the Commission. From the identical record, the *de novo* or supervening fact finder may draw legitimate inferences different from the equally legitimate inferences drawn by the initial fact finder. The same evidence can support different results. No additional evidence, therefore, is required to support the change in result.[6]

*Id.* at 81–82, 555 A.2d 542. Beyond making this general point, however, the appellees do not direct us to any specific evidence presented to the Commission that shows they were prejudiced by Elste's untimely written notice. And our review of the record of the Commission proceedings has not uncovered any additional evidence of prejudice beyond that submitted to the circuit court. Thus, the appellees' submission of the record from the Commission does not change our analysis with respect to whether the evidence presented in the circuit court was sufficient to satisfy their burden of production on the issue of prejudice.

The parties agree that there is no Maryland case law interpreting the meaning of "prejudice" under LE section 9–706, and this Court's research has not uncovered any. Thus, to determine the proof necessary to sustain a motion for judgment on the issue of prejudice under LE section 9–706, Elste directs us to Maryland cases involving burdens to prove prejudice in other contexts. These include the burden placed on an insurer to prove prejudice in failure to notify and failure to cooperate cases, as well as the burden to prove prejudice placed on the challenger to a foreclosure sale. Elste asserts that the "common thread" running through these cases is the necessity for the party claiming prejudice to show, affirmative-

---

6. The circuit court's instruction to the jury in this case reflected these principles: "The decision [of the Commission in favor of the claimant] is presumed to be correct. The employer and the insurer have the burden of proving by a preponderance of the evidence that the decision is wrong. In meeting this burden the employer and the insurer may rely on the same, less or more evidence than was presented to the Commission."

ly, with record evidence, that actual harm resulted from the delay or inaction.

Two of the three cases Elste cites concern the burden imposed on an insurer under Maryland Code (2008 Repl.Vol., 2009 Supp.), section 19–110 of the Insurance Article ("Ins."), when it seeks to disclaim coverage based on an insured's failure to cooperate or give notice. That statute provides:

> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

In the first case, *General Accident Insurance Co. v. Scott,* 107 Md.App. 603, 612, 669 A.2d 773 (1996), the insurer sought to disclaim liability for failure to provide "reasonable notice" when the insured submitted her claim for underinsured motorist coverage approximately 29 months after she was injured in an accident. The insurer argued among other things that even if it "could not identify specific instances of prejudice" it was nonetheless prejudiced by the delay because it could not "carry out the functions that prompt notice enables it to fulfill, such as easily locating [and interviewing] witnesses ... while the accident is fresh in their minds, [and] observing the physical condition of the scene before it changes[.]" *Id.* at 614, 669 A.2d 773.

In that case, we construed the statutory requirement of "actual prejudice" to mean "that an insurer may not disclaim coverage on the basis of prejudice that is only possible, theoretical, conjectural, or hypothetical." *Id.* at 615, 669 A.2d 773. Accordingly, we held that "conclusory allegations about difficulties and inconveniences that would result from *any* delay in notification," unsupported by specific instances of how the insurer's interests were harmed, were insufficient as a matter of law to survive a motion for summary judgment. *Id.*

at 616, 669 A.2d 773 (emphasis in original). In doing so, we observed that, although the insurer was claiming that the delay hindered its investigation of the accident, it adduced no evidence that it ever attempted to investigate the accident. Thus, the insurer could not "assert prejudice with regard to its ability to conduct an investigation that it never even tried to conduct." *Id.* at 617, 669 A.2d 773.

In the next case, *Allstate Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 363 Md. 106, 118, 767 A.2d 831 (2001), the Court of Appeals considered the standard for showing actual prejudice under Ins. section 19–110 in a failure to cooperate case. The insured in *Allstate* failed to attend scheduled depositions, respond to interrogatories and a document request, and attend trial in a negligence action stemming from an automobile collision. As a result, the trial court precluded her insurer from offering any evidence in defense of the claim against her. The Court of Appeals held that "the proper focus [for determining actual prejudice] should be on whether the insured's wilful conduct has, or may reasonably have, precluded the insurer from establishing a legitimate jury issue of the insured's liability, either liability *vel non* or for the damages awarded." *Id.* at 127–28, 767 A.2d 831. The Court considered and rejected rules at opposite ends of the spectrum that would either result in *per se* prejudice whenever an insured fails to appear at trial, or, at the other extreme, require the insurer to prove that an adverse verdict resulted from a lack of cooperation by the insured. Instead, the Court opted to take the middle ground by requiring "the insurer [to] show that the failure of cooperation has, in a significant way, precluded or hampered it from presenting a credible defense to the claim." *Id.* at 128, 767 A.2d 831.

Finally, the appellant directs our attention to *J. Ashley Corp. v. Burson*, 131 Md.App. 576, 583, 750 A.2d 618 (2000), in which J. Ashley sought to invalidate a trustee's foreclosure sale of its property based in part on a forty-five minute delay in the start of the sale. Although J. Ashley had proffered at trial that "people" present at the sale left because of the delay, we agreed with the trial court that this proffer was insufficient

for J. Ashley to meet its burden of showing harm or prejudice as a result of the delay. Our conclusion was based on J. Ashley's failure to support its proffer with "any particular or specific information showing that the 'people' were prepared to bid on the property, or that they would have bid more than the amount for which the property was ultimately sold." *Id.* at 586, 750 A.2d 618.

In addition to urging that we follow these cases by requiring evidence of actual harm in order to show prejudice, Elste reminds us of the well-settled principle that "the [Workers' Compensation Act] is remedial in nature and should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 472, 784 A.2d 569 (2001) (internal quotations marks omitted) (citation omitted). *See also* LE § 9–102.

The appellees distinguish the cases interpreting Ins. section 19–110 on the grounds that the law governing the insurer-insured relationship involves "different public mandates" than the law governing the employer-employee relationship, and that an insurer must show " 'actual prejudice' as opposed to just 'prejudice.' " They also argue that *Burson* is inapposite because there, the issue was "what constituted an irregularity in a foreclosure sale, [and] not the meaning of prejudice." Finally, the appellees argue that the rule of liberal construction of the Workers' Compensation Act does not apply to an evaluation of the facts or the claim in general, but is instead a tool of statutory construction used only when the statute in question is ambiguous, which is not the case here.

■ We agree with the appellees that the principle of liberal construction is a tool of statutory interpretation used to resolve ambiguities in remedial statutes in favor of the class the statute is intended to benefit, and that its use is unnecessary when the meaning of the statute is clear. *See, e.g., Design Kitchen and Baths v. Lagos,* 388 Md. 718, 724, 882 A.2d 817 (2005) ("[A] provision of the Workers' Compensation Act, a remedial statute, it is subject to the rule [of liberal

construction]. Any uncertainty in the law should be resolved in favor of the claimant, and thus interpretation of its provisions may depend upon whether its terms are clear or ambiguous." (internal citations and quotation marks omitted)). We also agree with the appellees that the term "prejudice" is clear and unambiguous. We disagree, however, that the burden to show "prejudice" under LE section 7–706(b) is distinct from the burden to show "actual prejudice" under Ins. section 19–110,[7] or that it is different from the burden to show prejudice in any other legal context.

It is axiomatic that the goal of statutory interpretation is to effectuate the intent of the Legislature, and that this task begins with the plain language of the statute, read in the context of the statutory scheme. *See, e.g., Serio v. Baltimore County,* 384 Md. 373, 390, 863 A.2d 952 (2004). When the language of the statute is clear, our analysis ends. *Id.* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed.) defines "prejudice" as "injury or damage resulting from some judgment or action of another in disregard of one's rights; *esp:* detriment to one's legal rights or claims." *See also* BLACK'S LAW DICTIONARY (9th ed.) (defining prejudice as "damage or detriment to one's legal rights or claims"). LE section 9–706(b) specifies that the employer must prove that prejudice resulted from a failure to comply with the notice requirement, which, for our purpose, is the requirement under LE section 9–704(b)(1) that the employer receive notice within ten days of the injury. If the employer fails to do so, the Commission must excuse the failure to comply. LE § 9–706(a). Thus, in this context, the employer must show that a failure to comply with LE section 9–704(b)(1) harmed its ability to defend against the claim for workers' compensation; otherwise, the failure is excused.

◼ As we noted, the standard for overcoming a motion for judgment or JNOV requires the party with the burden of

---

7. The appellees do not explain how these terms are different beyond stating that "actual prejudice" requires a greater evidentiary showing than "prejudice."

proof to present evidence that "amount[s] to more than sur-
mise, possibility, or conjecture." *Cavacos, supra,* 313 Md. at
259, 545 A.2d 46. Accordingly, in order to meet its burden of
production on the issue of prejudice, an employer must offer
some evidence, beyond the hypothetical, that a failure to
receive notice within ten days of the employee's accidental
injury actually harmed its legal interests.

The appellees emphasize that, had Elste complied with
Sparrows Point's internal policy of immediately reporting
employee injuries, they would have known her condition be-
fore she went on vacation. Moreover, the appellees point out
that Sparrows Point is a "large unionized steel plant, not a ma
and pa shop," and "[i]f accidents are not reported promptly [in
accordance with internal procedures], it makes it burdensome,
if not impossible, for incidents to be investigated ... and for
defects ... to be quickly repaired." The appellees further
note that this was not a case in which they had actual
knowledge of the accident when it occurred, and therefore
could respond immediately despite the lack of oral or written
notice from the employee. The problem with these argu-
ments, besides the absence of specific evidentiary support, is
that they are entirely inconsistent with the statutory scheme.

The question for decision here was not whether the appel-
lees were prejudiced by Elste's failure to comply with Spar-
rows Point's internal reporting procedure but whether the
appellees were prejudiced by her failure to comply with the
notice requirement in LE section 9–704(b)(1). That statute,
unlike the internal policy of Sparrows Point, gives an employ-
ee ten days from the date of the injury to report it to his or
her employer. In the interim, the employer may lack actual
knowledge of the injury, and the employee may engage in any
number of activities that might cause injury, such as walking
the dog, taking a shower, golfing, biking, or going on a
camping trip. The employer may also be deprived of an
opportunity to immediately investigate the accident or evalu-
ate the injured worker. Nonetheless, notice is still sufficient if
given within ten days of the injury.

As Elste points out, the timing of her vacation was merely fortuitous, as she may very well have gone on vacation within the ten-day period and returned in time to give proper notice (or given timely notice while she was on vacation). Under this scenario, the appellees similarly would have been unable to investigate the accident at the time it occurred, or evaluate Elste's injury before her vacation, but they would have no notice defense. Thus, an employee's mere participation in some intervening activity, or an employer's inability to conduct an immediate investigation, cannot, *by themselves,* constitute prejudice. Rather, to prove prejudice, the employer must offer some specific evidence of how it was harmed by not receiving notice within the ten-day period after the accident. In other words, here, the appellees needed to produce some evidence that a change occurred in Elste's condition, the scene of the accident, or the memory or availability of witnesses, etc., from day 10 after the accident to day 19, that hampered their defense to the claim.

As with the Maryland cases discussed above, the cases from other jurisdictions that Elste cites, while not necessary to our holding, are entirely consistent with it. In *Cutno v. Neeb Kearney & Co.,* 237 La. 828, 112 So.2d 628 (1959), the Supreme Court of Louisiana considered whether a worker's failure to notify his employer of his injury until five months after the six-month statutory deadline resulted in prejudice to the employer. The employer in that cases, like the appellees here, argued that it was prejudiced by an inability to immediately examine the employee and investigate the accident. The court rejected those arguments, opining that "the remote possibility that the employer might have given [the employee] better medical treatment or the suggestion that an earlier investigation of the incident would have been of more benefit to the employer [does not] constitute[ ] material prejudice." *Id.* at 631. The Court went on to conclude that the delay in giving notice did not bar the suit because the employer had made "no showing" to support its claims of prejudice. *Id.* at 631.

In another Louisiana case, *Holmes v. J.E. Merit Construc-tors, Inc.*, 702 So.2d 1126 (La.Ct.App.1997), the court consid-ered whether the employer suffered prejudice when it re-ceived notice of an employee's injury approximately ten months after the accident and nine months after the statutory 30–day deadline. The facts of *Holmes* are somewhat similar to this case: the employee's injury occurred when he tripped and fell; he acknowledged being aware of company policy requiring that injuries be reported on the day they occur, but said he failed to comply because he did not think he was hurt; he continued working for several weeks after the accident; and his supervisor testified that, had he been immediately notified of the injury, the safety department would have investigated the matter and a company physician would have examined the employee.

The workers' compensation judge found that the employer was prejudiced by an inability to examine the employee using its own doctor, which deprived it of evidence regarding causa-tion. The appellate court reversed, concluding that "[the employer] did not present evidence that it even sought an examination of [the employee] by a physician of its choice or an independent medical examination after it had notice of the accident"; and therefore did not show it was "materially prejudiced" by the delay. *Id.* at 1130.

Elste also cites *Lakey v. U.S. Airways, Inc.*, 155 N.C.App. 169, 573 S.E.2d 703 (2002), and *Dawkins v. Capitol Construc-tion Co.*, 252 S.C. 536, 167 S.E.2d 439 (1969). *Lakey* is distinguishable because North Carolina law excuses a failure to give timely written notice within 30 days of the accident only if the employer was not prejudiced *and* the employee has a reasonable excuse for the failure. Moreover, the employer in *Lakey* knew of the injury within 30 days of its occurrence and in fact was able to examine the employee twice with its own physician within that time period.

*Dawkins* is similarly distinct because, although the employ-ee failed to comply with South Carolina law requiring written notice within 30 days, the employer had "within moments after

the accident ... actual knowledge of every pertinent fact which would have been required to have been contained within the written notice." 167 S.E.2d at 440. Thus, the employer could not claim prejudice where "its knowledge of the pertinent facts was as full as would be disclosed by the written notice, had such been given." *Id.*

Despite these differences, *Lakey* and *Dawkins* support our conclusion here that an employer with the burden of showing prejudice from a failure to receive timely notice must support its assertions with specific evidence of how it was harmed by the delay. The court in *Lakey* commented that "[a]lthough defendants [the employer and its insurance carrier] assert they were prejudiced because they treated plaintiff's injury as an aggravation of a pre-existing injury, rather than a new injury or re-injury, defendants have failed to assert how this distinction resulted in prejudice." 573 S.E.2d at 706. In *Dawkins,* the court likewise noted that,

> the evidence adduced by the employer fails to sustain the burden of showing that there was in fact prejudice to the employer resulting from the failure to give, within thirty days, written notice. The employer did offer evidence to the effect that earlier medical attention would have enabled the employer's doctor to better diagnose the nature and extent of the injury and that earlier treatment would have likely tended to lessen the disability which eventually occurred. Assuming that the failure to seek earlier medical attention worked to the prejudice of the employer, there is no evidence, we think, in the record tending to prove that such resulted from the failure to give the written notice within thirty days.

167 S.E.2d at 440. *See also Fukuda v. Peerless Roofing Co.,* 55 Haw. 558, 523 P.2d 832, 834 (1974) (finding no evidence to support the employer-insurer's assertions that delayed notice prevented them "from providing the claimant with immediate medical attention so as to prevent aggravation of his injury, hampered their investigation of the circumstances surrounding the injury, and frustrated the employer's accident prevention program.").

Returning to the instant case, we stress that the evidentiary burden imposed on employers by LE section 9–706 is no more onerous than that ordinarily imposed on the party with the burden of proof. Thus, with respect to the burden of production, any evidence of harm to the employer's interests that "rise[s] above speculation, hypothesis, and conjecture" will suffice. *Giant, supra,* 152 Md.App. at 177, 831 A.2d 481. The appellees in this case, however, claim prejudice merely because they were unable to immediately investigate the accident and examine Elste. These claims are unsupported by even a scintilla of evidence demonstrating how the untimely notice impeded or hindered their investigation,[8] or prohibited them from diagnosing the cause, severity, or nature of the injury. In fact, the appellees presented no evidence that they even attempted to conduct an investigation or that Elste's injury was the result of anything other than a workplace accident. Moreover, the appellees admitted through counsel at the hearing on the JNOV motion that they did not examine Elste's knee when she reported to the dispensary, but instead waited until *after* she had had surgery even though, at that point, they had known of the injury for approximately one month.

Consequently, we conclude that the appellees did not adduce legally sufficient evidence to make prejudice as a consequence of Elste's delay in giving notice of her injury on day 19 following the accident, instead of day 10, a jury question; and the trial court erred by denying Elste's motion for judgment, and then her motion for JNOV.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI- MORE COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE**

---

**8.** Before the circuit court, counsel for the appellees argued that Barrett's inability to recall seeing or hearing about the accident demonstrated prejudice. The appellees have not pursued that argument before this Court, but we nonetheless point out that the relevant inquiry is whether Barrett's inability to recall the accident was attributable to Elste's delay in giving notice, not whether he could remember the accident at trial.

DECISION OF THE COMMISSION. COSTS TO BE PAID BY THE APPELLEES.